WILLIAM DORNFRIED *v.* OCTOBER TWENTY-FOUR, INC.
(14920)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and KATZ, Js.

Argued May 31—decision released August 9, 1994

*Timothy C. Moynahan,* for the appellant (plaintiff).
*Peter J. Zagorsky,* for the appellees (defendants).

KATZ, J. This is an action to enjoin the operation of a quarry. The plaintiff appeals from the judgment by the trial court in favor of the defendants, denying the injunctive relief. The issues on appeal are: (1) whether the verified complaint sufficiently alleged as a ground for injunctive relief that the defendants, October Twenty-Four, Inc., and A. Aiudi and Sons,[1] were oper-

---

[1] The defendant October Twenty-Four, Inc., owns a parcel of land containing approximately thirty-eight acres on Loon Lake Road in Plainville. The defendant A. Aiudi and Sons, a partnership engaged in the manufac-

ating a quarry in a single family residential zone in violation of the town zoning regulations; and (2) if so, whether the plaintiff, William Dornfried, the zoning enforcement officer for the town of Plainville, should have been estopped from enforcing the town zoning regulation that prohibits the defendants from operating the quarry.

The following facts are undisputed. On May 20, 1992, the plaintiff filed a complaint pursuant to General Statutes § 8-12,[2] to obtain a temporary and permanent

ture of ready-mix concrete, owns a ready-mix concrete plant in Plainville. October Twenty-Four, Inc., allows A. Aiudi and Sons to operate the quarry on its property to excavate trap rock for use in the concrete business. This case was initially brought against October Twenty-Four, Inc., as owner of the property. Sometime thereafter, A. Aiudi and Sons was allowed to intervene as a party defendant. Unless otherwise noted, October Twenty-Four, Inc., and A. Aiudi and Sons hereinafter will be referred to collectively as the defendants.

[2] General Statutes § 8-12 provides: "PROCEDURE WHEN REGULATIONS ARE VIOLATED. If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or, when the violation involves grading of land, the removal of earth or soil erosion and sediment control, to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation has been committed or exists, or the agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation or who maintains any building

injunction to halt the operation of a trap rock quarry on property of October Twenty-Four, Inc., located in an R-40 single family residential zone (R-40 zone) on North Mountain Road in Plainville. In his complaint, the plaintiff alleged that in April, 1992, he had notified October Twenty-Four, Inc., to cease and desist any further earth and rock removal because such activity was not a permitted use in an R-40 zone.[3] The plain-

or premises in which any such violation exists, shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the superior court shall have jurisdiction of all such offenses, subject to appeal as in other cases. Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order with respect to a violation involving grading of land, removal of earth or soil erosion and sediment control, fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. In any criminal prosecution under this section, the defendant may plead in abatement that such criminal prosecution is based on a zoning ordinance or regulation which is the subject of a civil action wherein one of the issues is the interpretation of such ordinance or regulations, and that the issues in the civil action are such that the prosecution would fail if the civil action results in an interpretation different from that claimed by the state in the criminal prosecution. If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. The court before which such prosecution is pending may order such prosecution abated if it finds that the allegations of the plea are true."

[3] Section 505 of the Plainville zoning regulations provides: "USES PERMITTED IN RESIDENCE R-40, R-20 AND R-15 ZONES

"Buildings and land may be used and buildings may be altered or erected to be used for the following purposes:

"1. Dwellings for one family.

"2. Farming, raising poultry, forestry, truck or nursery gardening provided that no livestock or poultry, except for household pets, shall be kept on any lot of less than two acres. One greenhouse of no more than 500 square feet in area may be located on any lot of two or more acres or as provided under Article 4 Section 410-7.

tiff also alleged that the illegality of operating a quarry in an R-40 zone already had been determined by this court in *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 602 A.2d 1011 (1992).[4] Finally, the plaintiff alleged that October Twenty-Four, Inc., had exceeded the approval that it had obtained in 1978 from the Plainville planning and zoning commission for a "site grading plan" that was subject to yearly review through and including September 24, 1991.

On August 25, 1992, after a full hearing on the temporary injunction, the trial court, *Goldberg, J.,* concluded that quarrying activity was being conducted in an R-40 zone in violation of the town zoning regulations and that the equities dictated that an injunction should issue. Accordingly, the trial court entered a temporary injunction "to halt the aforesaid illegal quarrying operation in violation of the Plainville zoning

"3. All buildings, except dwellings, and all storage of manure or other animal refuse shall be located not less than 100 feet from any street line or property line.

"4. The commercial raising of fur bearing animals and the commercial raising of pigs are prohibited.

"5. The display of products, produce and nursery stock raised on the premises is permitted and for this purpose, one roadside stand not over 100 square feet in area, which may be located within the required front yard, but not nearer the side lot lines than the required side yard and not less than 20 feet from the street line.

"6. Accessory uses customary to a permitted use with the following requirements:

"(a) No accessory building may be used as a residence.

"(b) One commercial vehicle of no more than ¾ ton capacity may be parked in a private driveway or behind the building line. No other outside parking or storage of commercial vehicles shall be permitted.

"(c) Parking or storage of commercial vehicles in a private garage shall be limited to one commercial vehicle not exceeding one ton in capacity.

"7. Signs, subject to the provisions of Article 11."

[4] In *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, supra, 221 Conn. 197–98, this court accepted the trial court's conclusions that the defendants had been quarrying in an R-40 zone and specifically remarked that "the defendants have not contested the illegality of the operation of a quarry in a residential zone," only that such activity constituted a nuisance.

ordinance." Thereafter, on June 11, 1993, after a full hearing on the plaintiff's request for a permanent injunction, the trial court, *Berger, J.*, vacated the temporary injunction and denied the permanent injunction. The trial court concluded that, under § 8-12, the plaintiff, as the zoning enforcement officer, was the proper party to institute an action to prohibit conduct that was in violation of a zoning ordinance. The trial court also noted that the plaintiff had made specific reference in the complaint to this court's opinion in *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, supra, 221 Conn. 194. Nevertheless, the trial court concluded that the plaintiff had failed to plead as a ground for injunctive relief that the defendants had been conducting an unpermitted activity by operating a quarry in an R-40 zone in violation of the town zoning regulations.[5] Rather, the trial court concluded that the plaintiff had pleaded as his sole ground for relief, and therefore had to prove, that the defendants had exceeded the scope of the permission granted to them by the planning and zoning commission in the 1978 site grading plan. After determining that the plaintiff had failed to prove those allegations,[6] the trial court addressed the affirmative

---

[5] The decision by the trial court, *Berger, J.*, that the complaint failed to allege as a ground for relief that the defendants were operating an active quarry in violation of the town zoning regulations obviously contradicted the earlier ruling by the trial court, *Goldberg, J.*, in issuing the temporary injunction.

[6] The trial court relied on the site grading plan to conclude that the planning and zoning commission had granted the defendants permission to operate a quarry. It recognized, along with Judge Goldberg, "the obvious": that the defendants, in fact, had been operating a quarry and that the "[c]ommission did err and should not have issued its original permit." In determining that the plaintiff had failed to prove that the defendants had exceeded the original 1978 permission, the trial court relied upon its findings that the 1978 site grading plan was silent as to the amount of rock to be removed and the depth of the excavation. The trial court termed the site grading plan as "open ended" in that it allowed the defendants to remove rock subject only to three conditions: a southerly limitation at Connecticut coordinate line N307500; a final grade that was to be at the 360 foot elevation;

defense of municipal estoppel,[7] concluded that the plaintiff was estopped from prohibiting the defendants from operating a quarry, and rendered judgment for the defendants.[8] This appeal followed.[9]

On appeal the plaintiff claims that the trial court improperly concluded that: (1) the complaint had failed to allege as a ground for relief that the defendants had been operating a rock quarry in an R-40 zone in violation of the town zoning regulations; (2) the defendants' operation of a rock quarry from 1978 through 1992 had not exceeded the site grading plan approval granted by the planning and zoning commission in 1978; and (3) the plaintiff, as zoning enforcement officer, is estopped from enforcing the town zoning regulation that prohibits the defendants from operating a rock quarry in an R-40 zone. We agree with the plaintiff as to the first and third issues and, therefore, reverse the judgment of the trial court.[10]

and the filing of yearly reports by the defendants. The trial court also noted that the original site grading plan did not require the defendants to obtain annual permission from the planning and zoning commission in order to continue the operation.

[7] The trial court was not required to address the affirmative defense unless it first found either that the plaintiff had pleaded and proved that the defendants' conduct had violated the town zoning regulation or that their conduct exceeded the scope of the site grading plan. Nevertheless, because it considered the issues to be "intertwined," the trial court proceeded to address the applicability of the equitable doctrine.

[8] Because this decision permitted the defendants to continue indefinitely to operate an active trap rock quarry in an R-40 zone, the plaintiff filed a motion to continue the temporary injunction pursuant to General Statutes § 52-476. Following the denial of this motion by the trial court, the plaintiff filed a motion for review with the Appellate Court, which granted the motion, granted the relief requested, and reinstated the temporary injunction.

[9] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[10] Because of our disposition of the first claim, we need not reach the issue of whether the trial court reasonably could have concluded that the

## I

We begin with a brief overview of the law regarding pleadings. " '[T]he interpretation of pleadings is always a question of law for the court . . . .' " (Citation omitted.) *Cahill* v. *Board of Education,* 198 Conn. 229, 236, 502 A.2d 410 (1985). "The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Beaudoin* v. *Town Oil Co.,* 207 Conn. 575, 587–88, 542 A.2d 1124 (1988), and cases cited therein. Although essential allegations may not be supplied by conjecture or remote implication; *Cahill* v. *Board of Education,* supra, 236; the complaint must be read in its entirety in such a way as to "give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." *Price* v. *Bouteiller,* 79 Conn. 255, 257, 64 A. 227 (1906). "As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery. *Tedesco* v. *Stamford,* 215 Conn. 450, 459, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992); *Giulietti* v. *Connecticut Ins. Placement Facility,* 205 Conn. 424, 434, 534 A.2d 213 (1987); see *Web Press Services Corp.* v. *New London Motors, Inc.,* 203 Conn. 342, 359–60, 525 A.2d 57 (1987); see also Practice Book §§ 108 and 109."[11] *Normand Josef Enterprises, Inc.* v. *Connecti-*

---

defendants' operation of a quarry from 1978 until 1992 had not exceeded the site grading plan approval granted by the planning and zoning commission in 1978.

[11] Practice Book § 108 provides in pertinent part: "[GENERAL RULES OF PLEADING]——FACT PLEADING

"Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they

*cut National Bank,* 230 Conn. 486, 496, 646 A.2d 1289 (1994). Finally, if the parties at trial have adopted a certain construction of the pleadings; see, e.g., *Milardo* v. *Branciforte,* 109 Conn. 693, 695, 145 A. 573 (1929); we should give deference to that construction.

Applying these principles to the facts of this case, we conclude that the trial court improperly interpreted the complaint by concluding that the plaintiff had failed to allege as a ground for relief that the defendants had been illegally operating a rock quarry in an R-40 zone. The complaint specifically alleges that the subject property is "situated in an R-40 residential zone as classified by the Plainville planning and zoning regulations and shown on its zoning map." It also alleges that "the parcel is located in an R-40 zone and quarrying or earth/rock removal is not a permitted use within this zone pursuant to § 505 of the Plainville zoning regulations." The complaint further alleges that October Twenty-Four, Inc., operates a "quarry on its property and is continuing it[s] quarrying operation as of this date."

Additionally, the complaint specifically alleges that the illegality of the quarrying operation at issue had already been determined in *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.,* supra, 221 Conn. 194, wherein this court affirmed the finding of the trial court, *O'Neill, J.,* that the defendants had been illegally oper-

are to be proved . . . . If any such pleading does not fully disclose the ground of claim . . . the court may order a fuller and more particular statement; and, if in the opinion of the court the pleadings do not sufficiently define the issues in dispute, it may direct the parties to prepare other issues, and such issues shall, if the parties differ, be settled by the court."

Practice Book § 109 provides in pertinent part: "[GENERAL RULES OF PLEADING]——PLEADING LEGAL EFFECT

"Acts . . . may be stated according to their legal effect, but in so doing the pleading should be such *as fairly to apprise the adverse party of the state of facts which it is intended to prove."* (Emphasis added.)

ating a quarry on the subject property.[12] By, in effect, asking the trial court to take judicial notice of this court's conclusions as set forth in that case, the plaintiff squarely placed the fact of the defendants' illegal conduct within the allegations of his complaint. Finally, the relief requested is an injunction barring the defendants from a commercial operation pursuant to § 8-12. On the basis of these allegations, the plaintiff argues, and we agree, that the complaint expressly asserts that the defendants had been operating and continue to operate a rock quarry in an R-40 zone in violation of the town zoning regulations as a basis for injunctive relief.

Moreover, there can be no serious claim of surprise or prejudice by the defendants. The record clearly reflects that the defendants were aware of the plaintiff's reliance on the operation of a quarry in an R-40 zone in violation of the town zoning regulations as a basis for the injunctive relief requested. This was certainly the case by the time of the trial on the permanent injunction.

In granting the temporary injunction, the trial court, *Goldberg, J.*, recognized that the complaint stated the claim of a zoning violation and based the temporary injunction solely on that ground. Referring to this court's opinion in *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, supra, 221 Conn. 197–98, and our review of the trial court's factual findings in that case, the trial court, *Goldberg, J.*, found that the defendants

---

[12] In that case, because the plaintiff's plan for development of its adjoining property originally had called for the construction of a hotel and the plaintiff subsequently altered its application to the town of Plainville to substitute an office building in its place, we remanded the case to the trial court to assess the impact that the quarry would have on the plaintiff's proposed office building and to reexamine the plaintiff's claim for injunctive relief. *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, supra, 221 Conn. 194.

had been operating a quarry in an R-40 zone in violation of § 505 of the Plainville zoning regulations. Despite the defendants' claim that the activities on the property had been carried on pursuant to a site grading plan allowing rock material to be removed, the trial court specifically found from its own review of all the exhibits that a quarrying operation was being conducted on the subject property. Judge Goldberg stated that although "crushing equipment and secondary breakers have been removed from the site, blasting is being continued to break up the rock and the rock material is then trucked from the site. Such activity still constitutes quarrying which is not a permitted use in an R-40 zone." After rejecting the defendants' claim of estoppel, the trial court issued the temporary injunction.

Thereafter, in their motion to dissolve or modify the temporary injunction, the defendants did not argue that Judge Goldberg had improperly entered the temporary injunction because the complaint had alleged only that the defendants had exceeded the approval granted by the planning and zoning commission in 1978 or that the plaintiff should have been confined to that claim on the basis of his limited allegations. In moving to dissolve or modify the temporary injunction, the defendants acknowledged that a claim of a zoning violation had been stated in the complaint and that it formed the basis upon which the plaintiff was seeking injunctive relief. Indeed, they specifically recounted the bases upon which the trial court had ordered a temporary injunction: "Said temporary injunction was based upon three separate findings: (1) the [named] [d]efendant's property was zoned R-40 (residential zone), (2) the [d]efendant[s'] activities constitute quarrying, and (3) quarrying is not allowed in an R-40 zone under the Plainville regulations."

Finally, apart from these earlier proceedings, the plaintiff made clear to the trial court, *Berger, J.,* during the hearing on the permanent injunction, his position that the complaint alleged a zoning violation claim, and, therefore, that he was affirmatively requesting injunctive relief on that claim. In the argument on the defendants' motion for judgment of dismissal under Practice Book § 302 at the close of his case, the plaintiff argued to the trial court that "we've established our case-in-chief, which is a violation of the zoning regulations of the town of Plainville" and "it's not legal to have a quarry in a residential zone." Similarly, in his posttrial brief, the plaintiff expressly argued that he was entitled to injunctive relief because "the proof conclusively establishes that the defendants were conducting a quarry in a residential zone, a violation under the Plainville zoning regulations." Because the trial court had deferred its ruling on the motion for judgment of dismissal, the plaintiff also pointed out in the context of that motion that the claim that the defendants had exceeded the scope of their approval could be ignored because the "plaintiff's complaint also alleges the alternative ground for injunction that [the] defendants were conducting a quarry in violation of the [zoning] regulations." At no time did the defendants even suggest that these arguments were outside the scope of the pleadings and should be disregarded for that reason.

Because we conclude that the complaint properly alleged as a ground for injunctive relief that the defendants had been operating a quarry in an R-40 zone in violation of the town zoning regulations, we must next examine the record to determine whether those allegations were proved. The trial court, *Berger, J.,* specifically found that the defendants had been operating a quarry: "Of course, Judge O'Neill did note the obvious, that the 'operation is quarrying and the [named] defendant's property contains a large quarry.' This was noted

on appeal by the Supreme Court [in 1992] as well as the fact that the defendant herein [October Twenty-Four, Inc.,] did not contest the illegality of the operation of a quarry in a residential zone. *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.,* [supra, 221 Conn. 196–98]."[13] Thereafter, the trial court concluded that the planning and zoning commission had improperly issued its original permit. In light of these findings by the trial court that the defendants had been operating a quarry in an R-40 zone in violation of the town zoning regulations, we next consider the issue of municipal estoppel.

## II

The plaintiff next argues that the trial court misapplied the doctrine of municipal estoppel and improperly concluded that the plaintiff was estopped from enforcing the town zoning regulation that prohibits quarrying in a residential zone. The defendants' claim of estoppel was based on their having operated a quarry on the property for a number of years under the authority of an approved site grading plan, with the knowledge and acquiescence of the planning and zoning commission. We agree with the plaintiff that the trial court misapplied the doctrine of municipal estoppel.

The law of equitable estoppel as applied to municipalities in the enforcement of zoning laws is well established. "In *Zoning Commission* v. *Lescynski,* 188 Conn. 724, 731–32, 453 A.2d 1144 (1982), we held that, in special circumstances, a municipality may be estopped from enforcing its zoning regulations. We recognized that, [in general,] estoppel always requires 'proof of two

---

[13] We note that Judge Goldberg in issuing the preliminary injunction also reached a similar conclusion: "This court also believes the defendants' actions to be quarrying and, notwithstanding the Commission or the other municipal officials' beliefs, finds that a portion of the premises contains a quarry. . . ."

essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi,* 177 Conn. 232, 242, 413 A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 353, 365 A.2d 1093 (1976); *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53–54, 184 A.2d 797 (1962).' " *West Hartford* v. *Rechel,* 190 Conn. 114, 121, 459 A.2d 1015 (1983). We further stated that "[a]lthough estoppel may not generally be invoked against a public agency in the exercise of its governmental functions; *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 353; *Bianco* v. *Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969); *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 501, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962); 6 McQuillin, Municipal Corporations (3d Ed. Rev.) § 20.13; 8A McQuillin, supra, §§ 25.349, 25.358; an exception is made where the party claiming estoppel would be subjected to a *substantial loss* if the municipality were permitted to negate the acts of its agents. *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 354; see 6 McQuillin, supra, [§ 20.13]; 9 McQuillin, supra, § 27.56. [Accordingly, we stated that estoppel] against municipalities is . . . limited and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 354." (Emphasis added.) *Zoning Commission* v. *Lescynski,* supra, 731–32; see also *Gelinas* v. *West Hartford,* 225 Conn. 575, 590, 626 A.2d 259 (1993); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 586–88.

As our case law makes clear, the defendants bore a substantial burden of proof in asserting the defense of municipal estoppel. *West Hartford* v. *Rechel,* supra, 190 Conn. 122. Specifically, the defendants were required to show, among other things, "so *substantial a loss* that the award of injunctive relief to enforce the town's zoning regulations would, in light of all the circumstances, be highly inequitable or oppressive." (Emphasis added.) Id., 125. In this case, the trial court found that the defendants would suffer such a loss. We disagree.

The trial court's determination that the defendants would suffer a substantial loss unless the plaintiff was estopped from enforcing the town zoning regulation is a finding of fact; *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 170 Conn. 355; T. Tondro, supra, p. 587; that will not be overturned unless it is clearly erroneous in light of the evidence in the whole record. Practice Book § 4061;[14] *Adriani* v. *Commission on Human Rights & Opportunities,* 228 Conn. 545, 548, 636 A.2d 1360 (1994); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). A finding of fact is clearly erroneous when there is no evidence in the record to support it; *Dalia* v. *Lawrence,* 226 Conn. 51, 71, 627 A.2d 392 (1993); or "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum*

[14] Practice Book § 4061 provides: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"It is the responsibility of the appellant to provide an adequate record for review."

*Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); see also *Web Press Services Corp.* v. *New London Motors, Inc.,* 205 Conn. 479, 483, 533 A.2d 1211 (1987)." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* supra, 230 Conn. 504. Our review of the record persuades us that the trial court improperly found that the defendants would suffer a substantial loss from the enforcement of the town zoning regulation.

The trial court's finding that the imposition of a permanent injunction would subject the defendants to a substantial loss was derived, in part, from the trial court's conclusion that the plaintiff's prayer for relief, in effect, sought to preclude the defendants from regrading, refilling, or in any way further developing their property.[15] The trial court's determination that an injunction would so prejudice the defendants, however, is not supported by the complaint itself. In paragraph 9 of his complaint, as amended, the plaintiff alleged that the defendants were "quarrying in [a] residential zone and [were continuing] to expand upon said illegal use in violation of § 8-12 of the Connecticut General Statutes." In his prayer for relief, the plaintiff requested a temporary and permanent injunction barring the defendants from "a commercial operation"— namely, the illegal quarrying alleged in paragraph 9 of the complaint. Thus, it is evident from the plaintiff's complaint that he sought only to enjoin the defendants' illegal quarrying in the R-40 zone. Moreover, it was within the trial court's discretion to limit the scope of the injunction to this illegal activity. *O'Neill* v. *Caro-*

---

[15] The trial court stated: "First, the [plaintiff's] prayer for relief presumably bars all development activity ('all commercial activity'). The request has never been refined and thus, the injunction would preclude the defendants from filling the hole and further development. Second, the site grading plan was premised on a regrading of the land from [a] 360 foot elevation to about a 370 foot elevation, east to west. . . . The requested injunction would bar this."

*lina Freight Carriers Corp.*, 156 Conn. 613, 618, 244 A.2d 372 (1968) (issuance of injunction and scope and quantum of injunctive relief rests in sound discretion of trial court). We therefore reject the trial court's reading of the plaintiff's request for relief, and conclude that the injunctive relief requested by the plaintiff only precludes quarrying and does not otherwise impact the defendants' ability to regrade, refill or further develop the property in accordance with applicable zoning regulations. We accordingly conclude that the trial court's finding that the defendants would suffer a substantial loss on the basis of the plaintiff's requested relief is not supported by the evidence.

In concluding that the defendants would suffer a substantial loss from the imposition of a permanent injunction, the trial court also found that the unquarried rock remaining on the property had "some value." By its own admission, however, the trial court made this finding in the absence of any evidence in the record concerning the value of the remaining rock.[16] The trial court determined that the rock had value solely on the basis of testimony indicating that, if the illegal quarrying were enjoined, A. Aiudi and Sons would be forced to pay more to obtain rock for use in its ready-mix concrete business. The defendants, however, presented no evidence documenting, either in a dollar figure or on a percentage basis, the increase in cost to A. Aiudi and

---

[16] The trial court stated: "[W]hile there was no evidence as to the value of the remaining rock, the testimony indicated there was at least 100,000 cubic yards . . . of rock remaining. This court is sure that it has some value."

At the January 10, 1978 meeting of the planning and zoning commission, it was noted that "[t]he amount of rock to be removed [was] estimated to be approximately 300,000 to 400,000 yards." It is worth noting that Elmo Aiudi testified before Judge Berger that A. Aiudi and Sons probably had removed approximately 300,000 cubic yards of rock from the property. Aiudi, however, admitted that he previously had testified before Judge Goldberg that the defendant already had removed 400,000 cubic yards of rock from the property.

Sons. Moreover, the defendants presented no evidence indicating that October Twenty-Four, Inc., receives payment from A. Aiudi and Sons for the rock quarried on the property. Thus, at most, the evidence reveals only that A. Aiudi and Sons, and not October Twenty-Four, Inc., which is the owner of the property, might be subjected to an undetermined increase in costs if the plaintiff were not estopped from enforcing the town zoning regulation. We conclude that such an unquantified increase in cost resulting in an unspecified prospective loss of profits to A. Aiudi and Sons, which does not own or lease the property, does not constitute a loss that is sufficiently substantial to invoke the doctrine of municipal estoppel.

Although we previously have not had occasion to delineate what constitutes a substantial loss for purposes of municipal estoppel, our earlier discussions of the elements of municipal estoppel relied on *Cities Service Oil Co.* v. *Des Plaines,* 21 Ill. 2d 157, 161, 171 N.E.2d 605 (1961), for the proposition that a defendant may invoke the doctrine of municipal estoppel only when he or she "would be subjected to a *substantial loss* if the municipality were permitted to negate the acts of its agents." (Emphasis added.) *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 170 Conn. 353, 354; *Pet Car Products, Inc.* v. *Barnett,* supra, 150 Conn. 53. The concept of substantial loss, as defined and discussed by the Illinois courts in *Cities Service Oil Co.* v. *Des Plaines,* supra, 161, and the cases cited therein, involved a much greater economic loss than that alleged and proved in this case. See, e.g., id., 158–59 (city estopped from enforcing ordinance prohibiting location of gas station within 300 feet of church when plaintiff purchased, made permanent improvements to, and expended large sums of money to build gas station on property within prohibited distance from church, in good faith reliance on permit and apparent acquies-

cence by city officials); *River Forest State Bank* v. *Hillside,* 6 Ill. 2d 451, 454–55, 129 N.E.2d 171 (1955) (ordinance prohibiting issuance of building permit for any lot, unless public sewer facilities were available, invalid in its application to plaintiffs' property when plaintiffs already had invested $20,000 on water system to prepare premises for the construction of homes in reliance on course of conduct by village from which they could have reasonably inferred and were induced to believe that use of septic tanks would be acceptable); *Hurt* v. *Hejhal,* 259 Ill. App. 221, 228 (1930) (city estopped from interfering with construction of building on ground that it violates ordinance when defendants acted in good faith under affirmative acts of city and made "expensive and permanent improvements which it would be highly inequitable and unjust to destroy"); *People ex rel. Deddo* v. *Thompson,* 209 Ill. App. 570, 576 (1918) (city estopped from enforcing ordinance making it unlawful to build garage within 200 feet of hospital or school, when defendant built garage within prohibited distance from hospital and school in good faith reliance on affirmative acts of city).

In this case, the defendants have offered no evidence of any out of pocket investment, such as a capital investment in equipment, a building, or real property, that would be lost if the town zoning regulation were enforced. Rather, the defendants have shown only that enforcement of the town zoning regulation would terminate A. Aiudi and Son's windfall of obtaining free rock for use in its concrete business from the operation of an illegal quarry in a residential zone. Such a loss does not constitute a substantial loss for the purposes of municipal estoppel.[17]

---

[17] Because we conclude that the defendants have failed to prove that enforcement of the town zoning regulation would subject them to a substantial loss, we need not address whether the defendants have proved adequately the other elements of municipal estoppel.

The trial court properly found that the defendants had been illegally operating an active quarry in an R-40 zone. We conclude, moreover, that the defendants did not establish that the plaintiff should have been estopped from enforcing the town zoning regulation. Accordingly, the plaintiff was entitled to enforce that regulation.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment in favor of the plaintiff granting the permanent injunction prohibiting the defendants from operating a quarry on the subject property.

In this opinon the other justices concurred.

