[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs brought suit against the defendant in seven counts. The first count alleges a one year lease between the parties for the property at 160 Cross Highway, Redding, Connecticut, at a rental of $1350 per month, with an option to purchase and an agreement for renovation of a garage, and, if the property was not purchased by the plaintiffs, reimbursement for the renovations.
The second count alleges the payment of a security deposit of $300 and a failure of the defendant to repay said deposit, and a claim for twice its value.
The third count realleges the defendant's promise to reimburse the plaintiffs for the aforementioned renovations if the property was not purchased by the plaintiffs, and the expenditure by the plaintiffs of $6,911.12 for these renovations, and failure to pay same by the defendant.
The fourth count alleges unlawful entry to the premises by the defendant and resulting harassment.
The fifth count alleges unlawful entry and possession by the defendant and failure to return personal property of the plaintiffs at a value of $1350.
The sixth count alleges an assault on the person of the plaintiff, Jeffrey Carolin, resulting in personal injuries to this plaintiff.
Finally, the seventh count alleges that as a result of the assault by the defendant on the plaintiff, Jeffrey Carolin, the plaintiffs both suffered emotional distress, insomnia, depression and a fear for their lives, and required police protection at a cost of $656. Said count also alleges a rental of a new dwelling at a cost of $950 per month.
In response to the plaintiffs' complaint, the defendant's amended answer denies all of the allegations of each count and interposes a special defense alleging that the work performed by the plaintiffs comes under the purview of the Home Improvement Act, and that there was noncompliance and no recovery can be allowed for this work. The defendant also has claimed by way of a counterclaim that the work performed by the plaintiffs was not authorized, was done in an irresponsible manner, and cost the defendant several thousands of dollars to rectify said work. CT Page 5992
As to the first count, the court finds that the plaintiff, Patricia Singer, and the defendant intended to enter into a one year written lease with the option to purchase the property and an agreement that if the plaintiffs did not purchase the property, the defendant would reimburse her for the cost of said renovations. However, although the parties may have agreed to enter into such a lease or even signed such a lease, the lease itself was never entered as evidence. Furthermore, this unproved lease did not contain an agreed purchase price for the property or any of the other specific terms for the intended purchase, so the court finds the referenced lease is unenforceable, and as such, the parties have proved only a month to month tenancy at $1350 per month. Further, the court does find that the plaintiff, Patricia Singer, did give the defendant landlord a security deposit of $300, which he never returned to her. The court also finds that there was a verbal agreement to reimburse the plaintiff Singer for the renovations if no purchase, and that in fact the plaintiffs never purchased the defendant's property. The court also finds that the defendant did not fully vacate the premises until October 7, 1995, despite the fact that the month to month lease was to commence on October 1, 1995. The court will make no award to the plaintiffs for their claim for rent for the first week of October, as there was evidence and testimony that they were allowed to move their belongings onto the premises before October 1, 1995, without charge.
A residential lease for one year or less need not be in writing to be enforceable. General Statutes § 52-550(b). Whereas, General Statutes § 47a-3b provides: "[u]nless the rental agreement fixes a definite term, the tenancy is month to month . . ." The testimony of Patricia Singer clearly indicates that the defendant landlord cancelled the intended one year lease and the parties agreed to a month to month tenancy.
With respect to an agreement for the sale of real property, it must be in writing to be enforceable. General Statutes §52-550 (a)(4). The court, accordingly, finds that the intended agreement for the sale and purchase of this real property is unenforceable as it does not satisfy the statute of frauds. Finally, an agreement between a landlord and a tenant for the tenant to make specified repairs or perform maintenance tasks, alterations or remodeling must be in writing and such transaction must be "entered into in good faith" and not for the purpose of evading the obligations of the landlord. General Statutes § CT Page 599347a-7 (d). As the court has previously found that the intended lease was unenforceable as it was not in writing, the plaintiffs cannot prevail on their claim for reimbursement for renovations on this count since this agreement does not comply with this statute.
As to count two, the court finds in favor of the plaintiff that she (Patricia Singer) paid $300 as security deposit and that the defendant landlord failed to return said deposit as prescribed in General Statutes § 47a-21 (d). "Within the time specified in subdivisions (2) and (4) of this subsection, the . . . landlord . . . shall pay to the tenant or former tenant: (A) The amount of any security deposit that was deposited by the tenant with the . . . landlord . . . less the value of any damages which [the] . . . landlord . . . has suffered as a result of such tenant's failure to comply with such tenant's obligations; and (B) any accrued interest due on such security deposit as required by subsection (i) of this section. . . ."
Subdivision (2) provides that if the tenant notifies the landlord in writing of the tenant's forwarding address upon the termination of the tenancy, "[w]ithin thirty days after termination of [the] tenancy, [the] landlord . . . shall deliver to the tenant . . . at such forwarding address" the amount of the security deposit as determined in subdivision (1) plus accrued interest as provided by subsection (i). General Statutes §47a-21 (d)(2). Section 47a-21 (d)(2) further provides that "[a]ny such landlord who violates any provision of this subsection shall be liable for twice the amount or value of any security deposit paid by such tenant . . . ." Subdivision (4) provides that "[a]ny landlord who does not have written notice of his tenant's . . . forwarding address shall deliver any . . . security deposit due to the tenant . . . within the time required by subdivision (2) of this subsection or within fifteen days after receiving written notice of such tenant's forwarding address, whichever is later." General Statutes § 47a-21 (d) (4). The court finds that the plaintiff, Patricia Singer, gave the requisite notice to the defendant landlord as evidenced by her letter dated January 18, 1996, (plaintiffs' exhibit ten) which letter and exhibit had attached to it the signed receipt from the defendant dated January 30, 1996. Accordingly, as to this count, the court finds for the plaintiff and awards her $600 plus statutory interest.
In the third count, the plaintiffs incorporate paragraphs one CT Page 5994 through five of count one and allege "the Plaintiffs took possession of the premises in reliance on the assurance of the Defendant that he would assist in the renovations and repairs to the dwelling and that in the event the Plaintiffs did not purchase the premises, [the] Defendant would reimburse [the] Plaintiffs for all their expenses in connection with said renovation and repairs." The plaintiffs also assert "[d]efendant failed to assist with said renovations and repairs and failed to reimburse Plaintiffs the amount of $6,911.12 when Plaintiffs vacated the premises . . . In consequence thereof, Plaintiffs were damaged." The court finds that the plaintiffs have established a claim for unjust enrichment.
The plaintiffs have not pleaded a cause of action sounding in unjust enrichment, however, they have proved such a claim at trial. "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . ." (Internal quotation marks omitted.) BarbaraWeisman, Trustee v. Kaspar, 233 Conn. 531, 550, 661 A.2d 530
(1995). The question, then, is whether the plaintiffs can recover on a theory not pleaded in their complaint but proved at trial.
The court finds that the plaintiffs have satisfied this burden of proof. First, the testimony of the parties reveals an agreement by the plaintiff tenants to renovate the garage and the defendant landlord's acquiescence in this agreement. The court refers to plaintiffs' exhibit six, a letter from the defendant to the plaintiff, Pat Singer and Hope Lovell, another tenant, in which he states in part: "so stop work on the room and watch cost on garage, $2,500 is what we talk about, but hidden cost come up so be carefull." Furthermore, plaintiffs' exhibit eight consisted of the receipt for the building permit taken out by the defendant together with a diagram of the to be renovated garage. Also, plaintiffs' exhibit nine clearly establishes the defendant landlord's participation in these renovations as evidenced by the town of Redding check-off sheet for a zoning permit for the proposed activity "converting [a] garage into [a] gym," and the reverse side of the application for the zoning permit signed by the defendant on September 21, 1995, together with the residential construction application and rough drawings, the former also signed by the defendant.
"It is fundamental in our law that the right of a plaintiff CT Page 5995 to recover is limited to the allegations in his complaint. . . . A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery." (Citations omitted; internal quotation marks omitted.) Moore v. Sergi, 38 Conn. App. 829, 841-42,664 A.2d 795. "The modern trend, [however] . . . [i]s to construe the pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery. . . . Finally, if the parties at trial have adopted a certain construction of the pleadings . . . we should give deference to that construction." (Citations omitted; internal quotation marks omitted.) Dornfriedv. October Twenty-Four, Inc., 230 Conn. 622, 629-30, 646 A.2d 772
(1994).
The court finds that the parties have adopted this construction of the pleadings and the court must now go on to the question of damages, if any, as proved by the plaintiffs. The plaintiffs offered the testimony of Hope Lovell, a tenant at the same property who occupied the downstairs apartment. She testified that the new tenants, plaintiffs Patricia Singer and Jeffrey Carolin, began work on the garage conversion late September, 1995, and that they initially used Tim Wilson to perform this renovation. The plaintiffs also produced Tim Wilson who testified that he was the former husband of Patricia Singer and, as a builder, he performed repairs and renovations to this renovated garage. He further testified that the defendant agreed to his working on this project and informed the witness he might help in the demolition. He also testified as to the value of his services, but the court ruled his testimony on the claimed amount for his work was inadmissible as it violated the provisions of the Home Improvement Act, § 20-418 et seq. of the General Statutes. This statute was raised by the defendant in his special defense and § 20-418 et seq. reads: "building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property, or the construction, replacement, installation or improvement of . . . garages . . . in connection with such land or building . . . in CT Page 5996 which the total cash price for all work agreed upon between the contractor and owner exceeds two hundred dollars." General Statutes § 20-419 (4). "`Home improvement' does not include . . . (E) any work performed without compensation by the owner on his own private residence or residential rental property." General Statutes § 20-419 (4)(e).
The court finds that the plaintiff, Patricia Singer, was attempting to enforce the home improvement contract between herself, the defendant and Tim Wilson. Accordingly, the defense of noncompliance with the Home Improvement Act for Wilson's services applies, and his work and its value are excluded and nonrecoverable by that plaintiff. However, with respect to the claim for unjust enrichment as set forth in the third count, this claim is entirely between the plaintiff Singer and the defendant and, as such, is not governed by the Home Improvement Act. Therefore, the court has to determine what damages have been proven by the plaintiff as this court is satisfied that the defendant was benefited by the plaintiffs' work on the renovated garage; the defendant unjustly did not pay the plaintiff for the benefit and that failure to pay was detrimental to the plaintiffs.
The court heard testimony from the plaintiffs, Patricia Singer and Jeffrey Carolin, as to the work they had performed themselves in the renovation, as well as testimony from Kim Wilde, who did a title search on the instant property, and referred to plaintiffs' exhibit three which she claimed showed an increased value for the garage from $500 to $5000. In addition, the other tenant, Hope Lovell, testified of her conversation with the defendant and the latter commented that the plaintiffs were doing nice work and it would be a very nice place for Pat. In fact, the defendant produced one Dwight Hughes of Meriden, Connecticut, a certified residential appraiser, who testified that he saw the premises on June 2, 1996, and it was a converted studio and since it was not designed for living space, it could not be fully valued as living space. Further, although he testified that the original garage and the mostly completed renovations were a wash, he felt there was improvement value to the extent of between $1200 and $1900/$2000 for the conversion. He further testified on cross-examination by the plaintiffs that assessed value is not market value and that the town assessor had increased the value of the defendant's property after he was there by a little over $7000 over the previous assessment. Based on the assessor's calculations at 70 percent of market value, an CT Page 5997 assessment of $7000 would equate with a value of $10,000, but there was no testimony as to the cost to complete the renovation after the plaintiffs stopped this work. Accordingly, the court finds that there was an increased value for the garage renovation and the plaintiffs have proved damages which benefited the defendant for this improvement to the extent of $5587.
As to counts four and five of the plaintiffs' complaint alleging unlawful entry by the defendant, General Statutes §47a-16 provides in relevant part: "[w]hen landlord may enter rented unit . . . . (c) A landlord shall not abuse the right of entry or use such right of entry to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter and may enter only at reasonable times, except in case of emergency . . . (2) as permitted by section47a-16a [extended absence of tenant], (3) pursuant to court order, or (4) if the tenant has abandoned or surrendered the premises."
General Statutes § 47a-18a provides for judicial relief if the landlord enters unlawfully pursuant to § 47a-16. Section 47a-18a provides in pertinent part: "[i]f the landlord makes an entry prohibited by section 47a-16 . . . the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. The tenant may also obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement."
In count four, the plaintiffs specifically allege that the defendant entered the premises on December 25, 1995 and January 5, 1996, without first notifying or seeking the approval of the plaintiffs.
The court heard no evidence with respect to any unauthorized entry on December 25, 1995. There was testimony by Jeffrey Carolin that in December, 1995, the defendant landlord showed up at the property and soon afterward he left, but no other specifics were testified to by this or any other witness. However, there was considerable testimony as to the January 5, 1996 incident. The evidence presented satisfies the court that the landlord's entry on that date was lawful. The plaintiff, Jeffrey Carolin, testified that on January 5, 1996, the defendant showed up at the premises and rang the doorbell and that he answered this call. At this point, the defendant requested Jeffrey Carolin to follow him into the garage and when Carolin CT Page 5998 walked into the renovated room, the defendant said: "he told Singer to stop doing work as he couldn't afford it." The court does not interpret this as evidence of an unauthorized entry.
Finally, the testimony revealed that the plaintiffs vacated the leased premises on January 25, 1996, even though they intended to return for the pickup of their remaining personal property. The plaintiff Singer testified that on that date most of their furniture and belongings had been removed. She also testified that she planned to return the next day but could not gain access as the defendant had put up a sign(s) to the effect, upon entry, you will be a trespasser and arrested. The plaintiff, Patricia Singer, testified she originally purchased most of the left behind items which were worth $1000, and that the items not returned by the landlord consisted of an answering machine, telephone, ladder, single bed, nineteen inch television (two to three years old and in working condition), antique trunk, oriental rug and tool box. She had paid the defendant $1200 for most of these items. The defendant testified that when he took occupancy after the plaintiffs vacated, the only furniture or personalty left behind were the rugs which he previously sold to the plaintiffs. The court is satisfied that the plaintiffs have sustained the proof as to this claim, but since all the items were secondhand, their value is minimal and the plaintiffs are awarded damages in the amount of $600.
Also, the plaintiffs testified that they vacated the premises on January 25, 1996, without hinderance [hindrance] or interference by the defendant. As to the new rental claim, their rent for the premises at 160 Cross Highway, Redding, was $1350 per month so the payment of $950 per month for a new dwelling did not result in any further damages to them. The court makes no award for this claim.
In the sixth count, the plaintiff, Jeffrey Carolin, alleges an assault on his person by the defendant on January 5, 1996. "An assault has been defined as any attempt with force or violence to do corporal offense to another, coupled with the present apparent ability to complete the act." D. Wright, J. Fitzgerald and W. Ankerman, Connecticut Law of Torts (3rd Ed. 1991) 6, 8. "A battery is a completed assault. Battery has been defined as any touching of the person of another in rudeness or anger." Id., 9, 10. "In this state an actionable assault and battery may be one committed wilfully . . . and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; CT Page 5999 or one committed negligently." (Internal quotation marks omitted.) Markey v. Santangelo, 195 Conn. 76, 78, 485 A.2d 1305
(1985). "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. . . . Not only the action producing the injury but the resulting injury must be intentional." (Internal quotation marks omitted.) Id., 77.
The court is satisfied that the defendant deliberately assaulted the plaintiff, Jeffrey Carolin, and as a result, this plaintiff was injured and sustained a strained muscle of the chest, scratches, bruises, difficulty in sleeping and depression, all of which complaints lasted for a period of time after the assault. This plaintiff further testified he was treated by a chiropractor on five occasions and that the plaintiff, Patricia Singer, paid this bill, as he was unemployed. Furthermore, the injuries sustained by Carolin were substantiated by plaintiff Singer and the witness, Kim Wilde, both of whom testified they saw Carolin on January 5, 1996, and that his face was red and puffy, and he appeared upset. However, no medical testimony or medical report was produced by this plaintiff so the court treats his injuries as basically superficial and, accordingly, awards him $3000.
The plaintiffs allege, as a result of the defendant's attack on the plaintiff Carolin, the plaintiffs have suffered extreme emotional distress, insomnia, depression and fear for their lives. Additionally, they allege hiring police protection at a cost to plaintiffs of $656, and a new rental cost of $950.
To recover for unintentional infliction of emotional distress, a plaintiff has the burden of proving that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Kilduff v. Adams, Inc., 219 Conn. 314, 325, 593 A.2d 478
(1991); see also Morris v. Hartford Courant Co., 200 Conn. 676,683, 513 A.2d 66 (1986). "[A] plaintiff may recover for unintentional infliction of emotional distress even if the distress does not result in subsequent bodily injury and the plaintiff was not at risk of harm from physical impact." Kilduffv. Adams, Inc., supra.
It should be noted that the allegations of the complaint do not state whether the plaintiff was asserting a claim for intentional or unintentional infliction of emotional CT Page 6000 distress.[1] There was no allegation in the complaint that the defendant's conduct was extreme and outrageous, that the defendant intended to cause emotional distress or that the emotional distress suffered by the plaintiffs was severe. The complaint asserts only a claim of infliction of emotional distress. Morris v. Hartford Courant Co., supra, 200 Conn. 681
n. 3. The plaintiff, Patricia Singer, cannot prevail as she was not present at the time of the assault. The court has found that the plaintiff, Jeffrey Carolin's injuries were not severe. As the court has previously addressed the assault as to this plaintiff and his resulting injuries, the court will not make any further award. The court finds for the defendant on this count as to emotional distress. On the issue of plaintiffs' expense for police protection and rental expense, the court finds for the defendant as there was testimony from plaintiffs' witness, Hope Lovell, that they agreed to pay for the hiring of the Redding police on a fifty-fifty basis. It is also notable that the town of Redding's bill for police protection, exhibit one, is made out to Hope Lovell. No other testimony was offered to justify this expenditure.
For the reasons stated above, the court finds for the plaintiffs and enters judgment in their favor on counts two, three and five of their complaint, and awards them damages totaling $6787 plus statutory interest on the security deposit claim; it further finds for the plaintiff, Jeffrey Carolin, on the sixth count and awards him additional damages of $3000; and finds for the defendant on counts one, four and seven of the plaintiffs' complaint. As to the defendant's counterclaim, the court finds the defendant did authorize the plaintiffs to do work on the garage and property (plaintiffs' exhibits six, eight and nine). Although the defendant submitted bills covering painting, garbage removal and floor repairs, the court is satisfied that he prevented the plaintiffs from entry to the premises on January 26, 1996, or any subsequent dates, so the court is left to conjecture as to the condition the plaintiffs would have left the premises had they been permitted to return unimpeded. The defendant's own testimony indicated the walls were scuffed but he offered no testimony of the painter who performed this work other than his unsubstantiated bill. This may well have consisted of reasonable wear and tear to the premises. As to the floors, there was no testimony as to the condition of the floors when the plaintiffs moved in so as to compare it with the condition when they vacated the premises. The defendant has not sustained his burden of proof. Accordingly, the court finds for the plaintiffs CT Page 6001 on the defendant's counterclaim.
Grogins, J.