[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal arising from the actions of the defendant Zoning Board of Appeals of the City of Bristol, CT Page 2895-BBBB which granted an application to revoke the zoning certificate that had authorized construction of an addition to the plaintiffs' family home.[1] There are five parties to the matter. The plaintiffs Joseph Mercieri, Jr. and Janice Mercieri claim to be aggrieved by virtue of their detrimental reliance on the zoning certificate issued to them by the City of Bristol on April 22, 1991. The plaintiffs have named as defendants the Zoning Board of Appeals of the City of Bristol,[2] and Robert Tabacco and Laurie Tabacco, those individuals having appealed the provision of the zoning certificate at issue.
In their amended appeal dated August 22, 1991, the plaintiffs raise six separate issues, claiming that by revoking their zoning certificate, the defendant board acted illegally, arbitrarily and in abuse of its discretion for the following reasons:[3] that the action of the board in revoking the zoning certificate was not in accord with the zoning regulations of the City of Bristol, that the revocation of their zoning certificate was contrary to the evidence presented at the hearing on the defendant Tabaccos' appeal of the order issuing the certificate; that the defendant zoning board failed to state upon the record the reasons for its decision, in violation of General Statutes § 8-7; that because the plaintiffs were unjustifiably induced to commence construction of an addition on their property, and because the enforcement of the regulations would be highly inequitable and oppressive, the defendant board is estopped from enforcing its zoning regulations; that members of the defendant zoning board of appeals participated in the hearing and decision to revoke the CT Page 2896 zoning certificate when they were directly and indirectly interested in the application in a personal or financial sense; and that in revoking their zoning certificate, the defendant zoning board of appeals took property from the plaintiffs without compensation in violation of General Statutes § 22a-43a(a), and in violation of the fifth and fourteenth amendments to the United States constitution and the constitution of Connecticut, article first, § 11.[4]
The parties have filed the appropriate briefs, the pleadings are closed, and arguments were presented at hearings held before the court. On the issue of aggrievement, the plaintiff Janice Mercieri provided testimony to support her claim that she and Joseph Mercieri, Jr. were the owners of the property in question, and that they resided in the homestead at that location. The issue of aggrievement presents a question of fact for the court to evaluate in the course of determining jurisdiction over the subject matter of the appeal. Walls v. Planning ZoningCommission, 176 Conn. 475, 477-79 (1979); I.R. Stich Associates,Inc. v. Town Council, 155 Conn. 1, 3 (1967); Fuller v. Planningand Zoning Commission of the Town of New Hartford, 21 Conn. App. 340,343-44 (1990). The court finds that the plaintiffs have fulfilled their obligation of demonstrating specific, personal and legal interests in the subject matter of the appeal. The plaintiffs have further shown that their interests have been directly and injuriously affected by the board's decision. Therefore, from the evidence adduced from the record and at the hearing, the court finds that plaintiffs are aggrieved persons within the meaning of General Statutes § 8-8. Hall v. ZoningCommission, 181 Conn. 442, 444, 445 (1980).
 I
The court finds the following facts from the record presented with this appeal:
On April 22, 1991, the plaintiffs, Joseph and Janice Mercieri, owned and occupied a single family dwelling at 59 Old Cider Mill Road in Bristol, Connecticut. This property, consisting of a home and garage with an adjacent in-ground swimming pool, was located within an R-25, single family residence zone in the City of Bristol, Connecticut, with uses permitted as designated by the defendant's Zoning Regulations effective December 21, 1990.[5] The property is also identified as Lot #8, Map 62, Old Cider Mill Road in Bristol, Connecticut. CT Page 2897
On November 19, 1990, the plaintiffs had applied for a building permit for construction of an addition to their dwelling. Originally, the addition was planned to consist of a bedroom, great room, 2 baths, pool kitchen, new laundry and loft areas. In support of their application, the plaintiffs submitted a letter dated November 19, 1990, signed by Janice Mercieri, representing that the planned addition is "not to be used for, or rented as, a separate unit (apartment). It is to be part of an existing single family home. The Building plan shows all indications of more than 1 unit or easily converted to more than 1 unit." Building Permit No. 55157 was issued to the plaintiffs on November 19, 1990. Construction was commenced upon the addition immediately after the zoning certificate and building permit were issued. By February 1, 1991, substantial work upon the addition had been completed. This apparently consisted of excavation, pouring of footings, framing, erection of the roof supports and plywood base, and partial exterior insulation. See Return of Record, Exhibit g.
On February 1, 1991, George Huston, as the Zoning Enforcement Officer for the City of Bristol, issued a cease and desist order which prohibited further work on the plaintiffs' addition. The order indicated that the structure/site constituted an "Illegal Building — Home — 2 Family." Huston sent a letter to the plaintiffs under date of February 5, 1991, advising them that they had violated "Bristol Zoning Regulations, Article V.A. 11 — Illegal Accessory Apartment (In-Law)," through, their failure to obtain a special permit, and as their "Apartment (House Addition)" exceeds the maximum allowable net floor area of 700 square feet.[6] This correspondence orders the plaintiffs to "immediately cease construction."
Through a second letter sent to the plaintiffs under date of February 21, 1991, Huston classified the original zoning permit as "improper." In a memorandum dated February 28, 1991, Huston clarified the basis for his determination that the plaintiffs' addition was not in compliance with applicable city zoning regulations, citing Bristol Zoning Regulations, Article VII.D.12 of the regulations dated February 1, 1981, pertaining to "Failure to Obtain Special Permit for two family home. (Variance also required)."[7] This matter was brought to the defendant board's attention through the plaintiffs' appeal of the cease and desist order issued February, 1991. After hearing, the board denied the plaintiffs' appeal on March 12, 1991. The plaintiffs followed CT Page 2898 this action by submitting an appeal to the Superior Court.[8]
While that appeal to the Superior Court was pending, the plaintiffs and their counsel prepared revised plans for the addition to 59 Old Cider Mill Road. The plaintiffs applied for new building documents in an effort to secure permission to pursue construction according to the revised plans. On April 22, 1991, the plaintiffs received Zoning Certificate No. 7026, issued by George Huston, the zoning enforcement officer of the City of Bristol. This certificate stated that the plaintiffs' property was properly zoned for the use and building of a "65' x 28' addition — [consisting of one bedroom — two baths — great room — loft — laundry room and game room — small storage area — NoKitchen." (Emphasis in the original.) In support of their application for a zoning certificate, the plaintiffs had submitted an affidavit intending "to insure (sic) the Zoning Enforcement officer that it is not [the plaintiffs'] intent to provide plumbing and electrical services designed to accommodate kitchen facilities until . . . the current pending appeal" of the previous zoning certificate was resolved. Return of Record, Exhibit g. Also on April 22, 1991, the plaintiffs applied for a building permit to "build 2 baths, 4 room addition, loft, Bedroom, Great Room, Game and Changing Room, Laundry, utility and Storage Room." Return of Record, Exhibit g. On that date, they received Building Permit No. 55483, referencing zoning certificate No. 7026, from Richard Pratt, the City of Bristol's building official.
On April 24, 1991, the defendant Tabaccos appealed the issuance of Zoning Certificate No. 7026 through submission of Application No. 2931. In their appeal, the Tabaccos claimed that the proposed use was not permitted under Bristol zoning regulations; that the proposed addition had been the subject of previous consideration by the Bristol Zoning Board of Appeals, which had denied the right to construct this addition on March 12, 1991; that the size of the addition exceeded the permitted size of an in-law apartment; and that a special permit was not issued for the premises, which, with the addition, would constitute either a two-family home or a single family home with an in-law apartment.
On May 3, 1991, Joseph A. Lanosa, Chairman of the Bristol zoning Board of Appeals, requested a special meeting of the Board to be held on May 14, 1991 for consideration of Application No. 2931. The meeting date was subsequently rescheduled for May 20, CT Page 2899 1991. Notice of the meeting was duly published on May 4, 1991 and May 14, 1991.
The meeting of Bristol Zoning Board of Appeals on May 20, 1991, was attended by Chairman Joseph Lanosa; Commissioners Bertrand Bouvier, Bernard Brzozowski, Arthur Ward, and Gilles Angers; and Alternates Jerald Rafaniello, Paul Vandal and Jesse Morton. Summary minutes of the meeting were made, and submitted thereafter, by Linda Gouthro, Recording Secretary for the Bristol Zoning Board of Appeals. Return of Record, Exhibit i.[9] No stenographic or electronic recording of this meeting was presented with the return of record.[10]
At that meeting, counsel for the Tabaccos claimed that the addition constituted a self-contained unit, an in-law apartment which is prohibited in an R-25 zone by the December 1990 Zoning Regulations. Minutes of May 20, 1991, p. 1. In support of this position, he produced letters dated April 1 and 14, 1991 from Atty. Robert Michalik providing opinions in response to inquiries presented by the town's zoning enforcement officer; and Janice Mercieri's letter of November 19, 1990. Huston, the zoning enforcement officer, stated that no certificate was issued for an in-law apartment, and there was no in-law apartment at the Mercieris' property. Huston agreed with the amended plans that had been submitted by the Mercieris in support of their application for the building permit and zoning certificate on April 22, 1991. Minutes of May 20, 1991, p. 2.
Attorney Michalik,[11] who also attended this meeting, opined that the construction of the addition met the zoning regulations without regard to the size of the addition. He based his opinion on changes made to the original construction plans, the Mercieris' affidavit assuring that support service for kitchen utilities would be installed in the addition, and the zoning enforcement officer's opportunity to inspect the addition during and following construction. Minutes of May 20, 1991, p. 3.
The minutes reflect the individual conclusions reached by the commissioners concerning the adequacy of the Mercieris' proposed plans: however, the minutes do not recite any collective opinion, or basis for the apparent consensus that was reached before voting unanimously to uphold the Tabaccos' appeal of the issuance of the Mercieris' zoning certificate. Votes were submitted by Commissioners Bouvier, Brzozowski, Ward, Rafaniello and Lanosa.[12] The board's vote was unanimous, upholding the CT Page 2900 Tabaccos' appeal of the issuance of Zoning Certificate No. 7026, which had permitted the Mercieris to continue construction of their addition. Minutes of May 20, 1991, p. 5.
Thereafter, the plaintiffs brought this appeal to the Superior Court.
 II
The plaintiffs claim that by revoking their zoning certificate, the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion, as the board failed to state upon the record the reasons for its decision, in violation of General Statutes § 8-7. That statute, as effective in 1991, provided in pertinent part: "Whenever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decisions appealed from, it shall state upon itsrecords the reason for its decision. . . ." (Emphasis added.) In a case such as this, the plaintiffs bear the burden of showing that the board acted illegally, arbitrarily and in abuse of its discretion by failing to comply with this statutory requirement.Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206 (1995);Welch v. Zoning Board of Appeals, 158 Conn. 208, 216 (1969). In this case, although the plaintiffs have shown that the defendant failed to meet its legal obligations pursuant to § 8-7, such failure, in and of itself, is an insufficient basis for sustaining this appeal. Gagnon v. Inland Wetlands WatercoursesCommission, 213 Conn. 604, 605 (1990); Caserta v. Zoning Board ofAppeals, 28 Conn. App. 256, 259, affirmed in part; modified in part on other grounds, 226 Conn. 80 (1993). Thus, while the plaintiffs succeed on this issue, they thereby obtain only the foundation for consolation in this case.[13]
While the court agrees that the defendant board failed to comply with the practical requirements of § 8-7, the defendant's minutes reflect a good-faith effort to preserve the events of the hearing held on May 20, 1991. These minutes would at least permit, if not facilitate, a summary review of the basis for the board's decision. It has been held that failure to comply with the recording requirements of § 8-7 is "not sufficient justification for the trial court's sustaining the plaintiff's appeal." Caserta v. Zoning Board of Appeals, supra, 28 Conn. App. 259. Accord, Gagnon v. Inland Wetlands Watercourses Commission,
CT Page 2901 supra, 213 Conn. 604.
General Statutes § 8-7 is consistent with General Statutes § 8-7a, also effective in 1991. This section required that "[t]he zoning commission, planning commission, planning and zoning commission and zoning board of appeals shall call in a competent stenographer to take the evidence, or shall cause the evidence to be recorded by a sound-recording device, in each hearing before such commission or board in which the right of appeal lies to the superior court."[14] In turn, § 8-7
and § 8-7a conformed with General Statutes § 8-8(i), effective in 1991. This subsection included a definition of the contents of the record to be returned by a zoning board during appeal proceedings: "The record shall include, without limitation, (1) the original papers acted on by the board and appealed from, or certified copies thereof, (2) a copy of the transcript of the stenographic or sound recording prepared in accordance with § 8-7a, and (3) the board's findings of factand conclusions of law, separately stated." (Emphasis added.) § 8-8(i), effective 1991.
General statutes § 8-8(1), effective in 1991, established that after review of the proceedings of a zoning commission, the court "may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from." Strict compliance with §8-7, § 8-8a, and § 8-8(i) would have expedited and enhanced the thoroughness with which the court could have considered the issues raised on appeal. "[W]here the board sets forth the reasons for its actions, the reviewing court is bound by those findings and may examine only those assigned grounds to determine whether they are reasonably supported by the administrative record or are clearly erroneous. Molic v. ZoningBoard of Appeals, 18 Conn. App. 159, 164-65, 556 A.2d 1049
(1989)." Caserta v. Zoning Board of Appeals, supra, 28 Conn. App. 260. However, if the reasons for denying or approving an application are not properly placed on the record by the zoning authority, if the reasons, are absent or if its reasons are inadequate, the court has the burden of searching the record in an attempt to find some basis for the action taken. ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 544-45 and n. 15 (1991); A. P. W. Holding Corp. v. Planning Zoning Board ofAppeals, 167 Conn. 182, 186 (1974), Stankiewicz v. Zoning Boardof Appeals, 15 Conn. App. 729, 732, affirmed, 209 Conn. 815
(1988). See also Stankiewicz v. Zoning Board of Appeals,
CT Page 2902211 Conn. 76, 77-78 (1989).
If the record reveals an adequate evidential basis for the board's decision, it will be affirmed. DeBeradinis v. ZoningCommission, 228 Conn. 187, 199 n. 7 (1994); Protect Hamden/NorthHaven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 545; Gross v. Planning Zoning Board of Appeals, 171 Conn. 326, 329 (1976); HomartDevelopment Co. v. Planning Zoning Commission of the Town ofWatertown, 26 Conn. App. 212, 220 (1991). The action of the zoning authority will be sustained, and the appeal denied, if just one of the authority's collectively stated reasons is sufficient to support it. Bloom v; Zoning Board of Appeals,
supra, 233 Conn. 208; Burnham v. Planning Zoning Commission ofSouth Windsor, 189 Conn. 261, 265 (1983). "Where a zoning board of appeals does not formally state the reasons for its decision . . . the trial court must search the record for a basis for the board's decision." Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 208. DeBeradinis v. Zoning Commission, supra,228 Conn. 199 n. 7; Protect Hamden/North Haven from ExcessiveTraffic and Pollution, Inc. v. Planning Zoning Commission,
supra, 220 Conn. 545; Gagnon v. Inland Wetlands WatercoursesCommission, supra, 213 Conn. 607. If the record of the proceedings before the board reveals no adequate evidential basis for its action, the appeal may be sustained. A. P. W HoldingCorp. v. Planning Zoning Board, supra, 167 Conn. 186-87, 188-89.
In creating a written record which sets for the basis for a zoning board's decision, it is preferable for the agency to collectively and formally state its reasons for sustaining or denying an appeal. Welch v. Zoning Board of Appeals, supra,158 Conn. 215. Such statements are of assistance to the court which is called upon to determine whether the board acted illegally, arbitrarily, or in abuse of its discretion, based on the facts presented. Welch v. Zoning Board of Appeals, supra, 158 Conn. 215;Caserta v. Zoning Board of Appeals, supra, 226 Conn. 87. Although individual members of a board may state their personal reasons for voting against or in favor of an application, "[t]hese individual views are not available to show the reasons for, or the ground of, the board's decision." (Citations omitted.) Welch v. Zoning Board of Appeals, supra, 158 Conn. 214. The personal "reasons" given by certain zoning board members cannot amount to a formal, collective statement of the agency.Protect Hamden/North Haven from Excessive Traffic Pollution,Inc. v. Planning and Zoning Commission, supra, 220 Conn. 545. CT Page 2903 Even where the minutes of an agency proceeding may contain comments by individual agency members, made prior to the agency's vote, it is inappropriate for a reviewing court to attempt to glean from this source a formal, collective statement representing the basis for the group's action, as is contemplated by § 8-7. Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 546
n. 15. Such statements of individual views still require the court to be "governed by the well settled principle of judicial review of zoning decisions that where the [agency] has failed to state its reasons, the court is obligated to search the record for a basis for its action." Id.
In this case, the board has failed to fully and fairly present any valid record of the basis for its denial of the Mercieri's appeal. The court has thoroughly reviewed the Return of Record, as noted in part I, and finds that no collective reason for the board's action has been presented for consideration or review, through the minutes or in any other portion of the record, notwithstanding the requirements of §8-7. The Minutes of May 20, 1991 do set forth comments from the individual board members, some of which are in support of the Mercieris' appeal. These comments are as follows: The minutes establish that Commissioner Bouvier "felt the plans do comply with the present Zoning Regulations." Minutes of May 20, 1991, p. 4. Commissioner Vandal "did not have a problem with the addition, however, he did feel it might be out of character with the area." Minutes of May 20, 1991, p. 4. Commissioner Brzozowski "felt the intention was to put in a second kitchen if the prior matter in litigation was won," which would ostensibly place the Mercieris in violation of the current zoning regulations. Minutes of May 20, 1991, p. 4. Commissioner Rafaniello stated that the Mercieris intended to install a second kitchen, that addition "would not comply with the Plan of Development", and "felt the size of the addition was not in character with homes in the existing area." Minutes of May 20, 1991, p. 4. Chairman Lanosa felt that the Mercieris intended to use the addition "as a separate unit with a kitchen," and that the addition constituted "an accessory type use" achieved in violation of the regulations. Minutes of May 20, 1991, p. 4
These comments are followed by a motion to uphold the Tabaccos' appeal "in accordance with the information received," and a bald, conclusory statement of the vote in support of the motion.[15] Minutes of May 20, 1991, p. 5. The Minutes contain CT Page 2904 no specific statement of the board's collective reason for its vote, and thus offer no reliable basis from which the reason board's action could be inferred. Minutes of May 20, 1991.
In the interest of judicial economy, and to ensure fairness to all parties, the court has also reviewed the transcript which had been identified as Plaintiffs' Exhibit No. 5 from a short calendar hearing held August 19, 1991 in Docket No. CV-91-0445844-S.[16] This transcript ostensibly reflects a portion of the hearing held on May 20, 1991 before the Zoning Board of Appeals for the City of Bristol.[17] This document sets forth an enhanced version of the board members' individual views that were summarized in the Minutes of May 20, 1991. After presentations by counsel for the Tabaccos and the Mercieris, and remarks from the public attending the hearing, each board member was allowed the opportunity to comment on the proceedings. Following this, the chairman entertained a motion to "close Application 2931," which had been brought by the Tabaccos to test the propriety of the building permit and zoning certificate granted to the Mercieris on April 22, 1991. Transcript, p. 18. The transcript reflects that Chairman Lanosa used the collective term "we" to make certain remarks about the Tabaccos' intent in bringing their appeal; a fair reading of these remarks indicates that the chairman had summarized the issues presented to the board, rather than summarizing the conclusions reached by the agency.[18]
The transcript thereafter reflects several areas of disagreement and agreement addressed by the board members. Commissioner Rafaniello stated his reservations about denying the Tabaccos' appeal, and indicated that he had a "serious problem" with the issuance of the permit and zoning certificate. Transcript, p. 19-20. Commissioner Ward stated that he "basically agree[d] with everything else that's been said." Transcript, p. 20. Commissioner Vandal, who did not register a vote at these proceedings, stated ". . . I really don't have a problem with this project at all. It may be out of character with the neighborhood, but I think that's best addressed with the Regulations in the zoning code." Transcript, p. 21. Chairman Lanosa thereafter addressed the issue of Attorney Michalik's participation in the hearing; Lanosa specified that his remarks were "just me speaking for myself personally." Transcript, p. 22. With regard to the Mercieris' plans, Chairman Lanosa stated "I'm not happy with it. I still feel it's an accessory building . . ." Transcript, p. 24. CT Page 2905
Following these statements, Commissioner Brzozowski moved that the board uphold the Tabaccos' appeal of the zoning certificate number 7026 issued on April 22, 1991. Transcript, p. 25. Commissioner Bouvier voted to uphold the appeal "[i]n agreement with the statements made by the Commissioner . . ." Transcript, p. 25. Commissioners Brzozowski, Ward, Rafaniello and the Chairman vote in favor of upholding the appeal, without explication. Transcript, p. 25. The transcript reflects that the Tabaccos' application was upheld, without more. Transcript, p. 26.
The transcript of the hearing before the defendant board thus contains no statement or conclusion that could be considered a collective assertion of the basis for the board's action in upholding the Tabaccos' appeal. Like the Minutes of May 20, 1991, the transcript fails, as well, to offer any reliable criteria from which the court reasonably without explication. Transcript, p. 25. The transcript reflects that the Tabaccos' application was upheld, without more. Transcript, p. 26.
The transcript of the hearing before the defendant board thus contains no statement or conclusion that could be considered a collective assertion of the basis for the board's action in upholding the Tabaccos' appeal. Like the Minutes of May 20, 1991, the transcript fails, as well, to offer any reliable criteria from which the court reasonably could infer the basis of the board's action.
Despite these apparent defects in form and substance, however, this court must follow the consistent edict that a zoning board's failure to publish the basis for its decision will not, alone, adversely affect its position upon appeal. Welch v.Zoning Board of Appeals, supra, 158 Conn. 214; Caserta v. ZoningBoard of Appeals, supra, 28 Conn. App. 259. Accord, Gagnon v.Inland Wetlands Watercourses Commission, supra, 213 Conn. 604. See Protect Hamden/North Conn. Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 544-545;Ghent v. Planning Commission, 219 Conn. 511, 515-516
(1991); TCR New Canaan, Inc. v. Planning Zoning Commission ofthe Town of Trumbull, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 389353 (April 5, 1992). Therefore, the court finds that the board's failure to comply with the requisites of § 8-7, in and of itself, neither brings fatal prejudice to the defendants, nor does it provide an effective independent foundation for the relief CT Page 2906 requested here by the plaintiffs.
 III
The plaintiffs claim that by revoking the zoning certificate, the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion, as this action was not in accord with the zoning regulations of the City of Bristol. Again, the burden of showing that the board acted illegal, arbitrarily and in abuse of its discretion or with disregard for the evidence falls upon the plaintiffs. Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 206; Welch v. Zoning Board of Appeals,
supra, 158 Conn. 216. The court finds that the plaintiffs have sustained their burden at law, and accordingly finds this issue in their favor.
Connecticut courts have long acknowledged that the decision of a zoning authority must not be disturbed "unless the party aggrieved . . . establishes that the [authority] acted arbitrarily or illegally." Burnham v. Planning ZoningCommission, supra, 189 Conn. 266. Accord, Spectrum ofConnecticut, Inc. v. Planning Zoning Commission, 13 Conn. App. 159,164 (1988); Gagnon v. Municipal Planning Commission,10 Conn. App. 54, 56-57 (1987). See, Primerica v. Planning ZoningCommission, 211 Conn. 85, 96 (1989). A trial court has no authority to weigh evidence and determine issues of fact presented to a zoning board, and may not substitute its decision for that of the local authority, where the authority has rendered a fair and reasonable judgment, after a full nearing of the issues. Baron v. Planning and Zoning Commission of the Town ofHaddam, 22 Conn. App. 255, 257-58 (1990); Horn v. Zoning Board ofAppeals, 18 Conn. App. 674, 676-77 (1989). The trial court may, however, review the reasonableness of the findings made by the zoning authority, as are supported by facts discernible in the record. Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. 53, 68 (1988).
"The question of whether a particular statute or regulation applies to a given set of facts is a question of statutory interpretation. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the town. . . . Rather, the court determines legislative intent from the language used in the CT Page 2907 regulations. . . . `We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms.' . . . The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." (Internal and external citations omitted; comment omitted.) Coppola v. ZoningBoard of Appeals, 23 Conn. App. 636, 640-41 (1990).
 A
The record in this matter fails to reflect that any specific zoning regulations were the subject of the defendant board's consideration at the hearing held on May 20, 1991. The Tabaccos' Notice of Appeal raises general grounds, without identifying any particular regulations that were alleged to be the subject of the plaintiffs' violations. Return of Record, Exhibit c. Those grounds include" 1.) Use is not permitted under Bristol Zoning regulations, 2.) Bristol Zoning Board of Appeals determined that nearly identical addition was an impermissible two-family home . . . 3.) Special permit has not been issued for premises, which is a two-family home with an in-law apartment. Size of addition exceeds size of in-law apartment. . . . Not in conformance with plan of development. Site plan not approved. Does not comply with accessory dwelling units requirements." Id. The minutes of that meeting reflect the Tabaccos' claim that "under the Zoning Regulations of December 1990 . . . an in-law apartment in an R-25 zone is not allowed." Minutes of May 20, 1991, p. 1. They further complained that "the size of the addition is nearly 3 times the size of that which is allowed in the [December 1990] regulations. The addition is a self-contained unit, referring to Page 3 and 12 of the Zoning regulations . . . [and] a unit of this-type would require its own lot. Id. The minutes further establish the Tabaccos' assertion that "the applicants have not followed the correct procedure to acquire an in-law apartment. The addition is not in character with the neighborhood nor is it in compliance with the Plan of Development." Minutes of May 20, 1991, p. 2. The Tabaccos' also complained that the Mercieris' addition established "a separate and distinct unit — constituting two units on one lot," and that the Mercieris "should have applied for a variance, Special Permit and a site plan." Id. CT Page 2908
As it is required to do, the court has reviewed the record to ascertain those specific regulations which were brought before the defendant board to form the basis for granting the Tabaccos' application requesting revocation of the Mercieris' zoning certificate. Such a process is necessary before an evaluation of the reasonableness of the defendant board's decision can be undertaken. Those regulations, as reflected in Return of Record, Exhibit b, and as considered by the court, are reasonably identified as the following:[19]
SECTION I.A.2. [Purpose of the regulations] "To conserve the value of buildings and to encourage the most appropriate use of land throughout the city of Bristol in accordance with the city's Plan of Development."
SECTION II.B.5. Definitions, Building: "A structure having a roof supported by columns or walls and intended for the shelter, housing, or enclosure of any person, animal, process, equipment, goods or materials of any kind or nature."
SECTION II.B.6. Definitions, Building, Accessory: "A building, the use of which is customarily incidental and subordinate to that of the principle building, structure or use on the same lot."
SECTION II.B.21. Definitions, Dwelling: "A building or portion thereof which is used exclusively for human habitation."
SECTION II.B.22. Definitions, Dwelling, Attached: "A building containing two or more dwelling units attached to each other by continuous vertical party walls, without openings except for utilities, which walls extend from basement or cellar to roof."
SECTION II.B.24. Definitions, Dwelling, Multifamily: A building containing four or more dwelling units, including, but not limited to garden apartments and townhouses."
SECTION II.B.25. Definitions, Dwelling Unit: "A room or group of rooms located within a dwelling and forming a single habitable unit with facilities which are used, arranged or designed to be occupied for living, sleeping, cooking and eating."
SECTION II.B.29. Definitions, Family: "One person, or a group of two or more persons related by blood, marriage, legal adoption CT Page 2909 or legal guardianship, or a group of not , more than six unrelated persons, living and cooking together as a single housekeeping unit, including domestic help but excluding boarders or roomers."
SECTION V.A.2. Single-Family Residential Zones, Permitted Uses: "The following principal uses shall be permitted in all Single-Family Residential zones by right:
a. Single-family dwellings."
SECTION V.A.3. Single-Family Residential Zones, Special Permit Uses: "Except as otherwise provided for herein, the following principal uses shall be permitted in all Single-Family Residential zones subject to Special Permit and Site Plan approvals in accordance with Sections X and XI:
 . . . v. The adaptive re-use of existing non-residential buildings to multi-family residential use, subject to the provisions of Section V.A.9."
SECTION V.A.4. Single-Family Residential Zones, Permitted Accessory Buildings, structures and Uses: This section identifies the specific "accessory buildings, structures and uses" that are "permitted in all Single-Family Residential zones by right. . ." No buildings used for human habitation are included in this section.
SECTION V.A.5. Single-Family Residential Zones, Accessory Buildings, structures and Uses by Special Permit: This section identifies the specific "accessory buildings, structures and uses" that are "permitted in all Single-Family Residential zones subject to Special Permit and Site Plan approvals in accordance with Sections X and XI:
 a. Accessory dwelling units, subject to the provisions of Section V.A.11.
 b. A home office or a home occupation located in a dwelling unit also used by the person as his/her own residence. . . . "
No other buildings used for human habitation are included in this section. CT Page 2910
SECTION V.A.9. Adaptive Re-Use of Existing Non-Residential Buildings to Multi-Family Residential Use: This section provides procedures for the conversions referenced in its title.
SECTION V.A.11. Single-Family Residential Zones, Accessory Dwelling Units: "A single-family dwelling may be allowed to accommodate one accessory dwelling unit in any Single-Family Residential zone subject to Special Permit and Site Plan approvals in accordance with Sections X and XI and the following provisions:
 . . . b. Occupancy of the accessory dwelling unit shall be limited to the children, parents, grandparents, brothers or sisters of the owner of the dwelling.
 c. The accessory dwelling unit shall have a minimum net floor area of 400 square feet, a maximum net floor area of 700 square feet, and a maximum, of two bedrooms.
 . . . e. The accessory dwelling unit shall be self-contained, with separate cooking, sanitary and sleeping facilities for the exclusive use of the occupant. . . ."
SECTION VIII. Supplementary Regulations.
SECTION VIII.A.4.a.3.[20]
SECTION X.A.3. Special Permits, Need for Site Plan Approval: "Any Special Permit approved by the [Zoning Commission of the city of Bristol] commission shall require a Site Plan application to be submitted and approved in accordance with the provisions of Section XI prior to the issuance of a Building Permit. The applicant may choose to submit the Site Plan application concurrently with or subsequent to the Special Permit Application."
SECTION XI.2. Site Plans, Authority: "Site Plan approval shall be obtained from the Zoning Commission prior to the establishment, expansion or change of any use of land and/or structure which requires a Special Permit. Such Site Plan approval shall be obtained concurrently with or subsequent to the granting of the Special Permit." CT Page 2911
 B
As noted in part II, the record in this case contains no collective basis for the board's resolution which sustained the Tabaccos' appeal of the issuance of the Mercieris' zoning certificate. Accordingly, "the trial court has searched the record for a basis for the board's decision." Bloom v. Zoning'Board of Appeals, supra, 233 Conn. 208; DeBeradinis v. ZoningCommission, supra, 228 Conn. 199 n. 7; Protect Hamden/North Havenfrom Excessive Traffic and Pollution, Inc. v. Planning andZoning Commission of the Town of Hamden, supra, 220 Conn. 545. The court has reviewed in detail the submission of plot plans and schematic drawings, photographs, blueprints, the Regulations, the minutes of hearings held before the board on March 20, 1991, and all other exhibits presented with the record. These exhibits include the letter sent to the Tabacco's by the city of Bristol on May 30, 1991, to inform them that their application had been upheld by the defendant board. Return of Record, Exhibit k. This correspondence fails, as well, to note any basis for the board's decision, but merely sets forth the result obtained at the hearing on May 20, 1991. As well, the court has also reviewed the transcript which reproduces a portion of the hearing held before the defendant board concerning the Tabaccos' appeal.[21]
This review of the record affirms the court's conclusion that it presents no collective statement from the board establishing that it. based its ruling upon a determination that the plaintiffs had failed to comply with any specific provision of the effective regulations. The Minutes of May 20, 1991 fail to demonstrate reference to any particular regulation, and reveal no deliberation of the Mercieris' lack of compliance with existing regulations. The minutes provide commentary by Atty. Michalik, who was questioned by Chairman Lanosa concerning his opinion regarding the whether the Mercieris' current plot plan was "acceptable." Minutes of May 20, 1991, p. 3.[22] The record reflects Atty. Michalik's response as follows: "Attorney Michalik spoke of the affidavit which the Mercieri's (sic) signed, that no plumbing or wiring would go into the addition to service a kitchen, and also that he advised Mr. Huston to inspect the property so as to be assured that those items were not installed. Because of the above reasons, it was of his opinion that the construction to the addition met the Zoning Regulations no matter what the size of the addition."[23] Id.
As discussed in part II, the minutes contain statements made CT Page 2912 by individual board member concerning the validity of the Mercieris' April 22, 1991 zoning certificate. Commissioner Rafaniello discussed the application of several regulations: "He . . . referred to Section 1.A.2. of the Zoning Regulations to conserve the value of existing homes and Section VIII where it refers to protecting the character of the area. Also Section VIII.A.3 referring to numbers of dwelling units." Minutes of May 20, 1991, p. 4. Chairman Lanosa "referred to Section V.11 of the Zoning Regulations." The minutes lack, however, any indication that the individual board members considered the regulations placed at issue by their colleagues, or whether the collective board accepted or rejected the application of any specific regulation to the facts of this case. There were inadequate facts presented with the record from which the court could conclude that the board determined that the plaintiffs were attempting to construct the addition to house more than one family, that it constituted a structure requiring procurement of a special permit or variance, that it constituted an attached dwelling, or that it fell below the minimum or above the maximum amount of appropriate square footage for a specific type of dwelling contemplated by the regulations. In sum, after a full review of the Return of Record, and the transcript, the court is unable to find any basis for determining that the board had, in fact reached the conclusion that any of the regulations had specific application to the facts of this case. The record fails to provide a basis for effective review of the boards' action.
Under these circumstances, the court must rely on the principles of A. P. W. Holding Corp. v. Zoning Board; supra,167 Conn. 186-187, 188-189; discussed in part II. Here, as "the record of the proceedings before the board reveals no adequate evidential basis for its action, the appeal may be sustained." Id. Given the absence of information contained in the record, in violation of General statutes § 8-7, the court finds this issue in favor of the plaintiffs.
 IV
The plaintiffs claim that the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion in that by sustaining the Tabaccos' application, the board took action which was contrary to the evidence presented at the hearing held on, May 20, 1991. As noted above, the plaintiffs bear the burden of showing that the board acted illegally, arbitrarily, and in abuse of its discretion or with disregard to CT Page 2913 the evidence. Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206;Welch v. Zoning Board of Appeals, supra, 158 Conn. 216.Baron v. Planning and Zoning Commission of the Town of Haddam,
supra, 22 Conn. App. 257-58. The court here finds that the plaintiffs have sustained their burden at law, and accordingly finds this issue in their favor.
In addressing this issue, the court references the legal principles and findings of fact set forth in parts II and III, above. The court has no authority to re-try the issues of fact presented to a zoning board, where the board has rendered a fair and reasonable judgment in response to the evidence before it.Baron v. Planning and Zoning Commission of the Town of Haddam,
supra, 22 Conn. App. 257-58; Horn v. Zoning Board of Appeals,
supra, 18 Conn. App. 676-77. The trial court may, however, review the reasonableness of the findings made by the zoning authority, as are supported by facts discernible in the record. Daughters ofSt. Paul, Inc. v. Zoning Board of Appeals, supra, 17 Conn. App. 68.
As noted in parts II and III, the record in this case is devoid of any information specifying the findings made by the zoning authority as a body. As such, the court is effectively precluded from reviewing the reasonableness of the board's findings, or of the basis for its action in sustaining the Tabaccos' application. Such preclusion is contrary to the intentions of cases such as Baron v. Planning and ZoningCommission of the Town of Haddam; supra, 25 Conn. App. 255; andDaughters of St. Paul, Inc. v. Zoning Board of Appeals; supra,17 Conn. App. 53; cited above. In this case, the defendant board accepted the obligation of submitting the Return of Record, as was imposed upon it by, General Statutes § 8-8(i), effective in 1991. However, as the record in the present case has effectively eradicated the court's opportunity to review the basis of the board's decision, the defendants cannot fairly be permitted to benefit from this occurrence while imperiling the plaintiffs. Accordingly, this issue, as well, is found in favor of the plaintiffs.
 V
The plaintiffs claim that the defendant zoning board of appeals is estopped from prohibiting continued construction upon their addition because they were unjustifiably induced to commence this construction by agents, of the City of Bristol. The plaintiffs further claim that because enforcement of the CT Page 2914 applicable zoning regulations would be highly inequitable and oppressive, the board is estopped from such action. The burden of showing that the board acted in such an improper manner falls upon the plaintiffs. Bloom v. Zoning Board of Appeals, supra,233 Conn. 206; O'Sullivan v. Bergenty, 214 Conn. 641, 650 (1990). The court finds that the plaintiffs have failed to meet their burden at law, and accordingly finds this issue in favor of the defendants.
Issues such as laches and estoppel are properly brought to the court for resolution, even though the subject matter was presented originally to a zoning board for review. Osterberg v.Seymour Zoning Board of Appeals, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 031218,1990 Ct. Sup. 3449, 3451 (November 15, 1990) (Fuller, J).[24] "While such claims are more likely to arise in an injunction action [brought] to enforce municipal regulations . . . these are also proper issues to raise in an appeal from a decision of a zoning board of appeals upholding a decision of the zoning enforcement officer." Id.
It is generally acknowledged that "`"[u]nder our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury."' . . .Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148,527 A.2d 679 (1987)." (Other citations omitted; internal quotation marks omitted.) O'Sullivan v. Bergenty, supra, 214 Conn. 648. The burden required to establish equitable estoppel on a valid basis is clear: "In Kimberly-Clark Corporation v. Dubno, supra, 148, [the Supreme Court] stated: `[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.'" (Other citations omitted; internal quotation marks omitted.) O'Sullivan v. Bergenty, supra, 214 Conn. 650. Due diligence may be proved by direct evidence or through properly drawn inferences. See O'Sullivan v. Bergenty, supra,214 Conn. 650-51.[25]
Similar principles apply when estoppel is claimed against a municipality. In such a case, the proponents must establish first CT Page 2915 that an agent of a town induced them to believe that certain facts existed and to act on that belief; and second, that they changed their positions in reliance upon those facts, thereby incurring some injury. Gelinas v. West Hartford, 225 Conn. 575,590 (1993). "The law of equitable estoppel as applied to municipalities in the enforcement of zoning laws is well established. . . . `[I]n special circumstances, a municipality may be estopped from enforcing its zoning regulations.' . . . `[A]lthough estoppel may not generally be invoked against a public agency in the exercise of its governmental functions . . . an exception is made where the party claiming estoppel would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. . . [Accordingly, . . . estoppel] against municipalities is . . . limited and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. . . .' (Emphasis added.) Zoning Commission v. Lescynski, [188 Conn.] 731-32 [1982]; see also Gelinas v. West Hartford, 225 Conn. 575, 590,626 A.2d 259 (1993); T. Tondro, Connecticut Land Use Regulation, (2d Ed. 1992) pp. 586-88." (Internal citations omitted.) Dornfriedv. October Twenty-Four, Inc., 230 Conn. 622, 634-35 (1994). The foregoing principles were most recently affirmed, in their entirety, in Bloom v. Zoning Board of Appeals, supra, 233 Conn. 203 n. 6.
Where municipal estoppel is at issue, the injury resulting from that reliance must be of such a nature that it would be "highly inequitable or oppressive to enforce the [town's zoning] regulations." Zoning Commission v. Lescynski, supra, 188 Conn. 732. In determining whether such "special circumstances" exist as are required for the application of municipal estoppel, the trial court must undertake the process of weighing competing equitable considerations such as the defendant's conduct in permitting initial construction of the plaintiffs' addition, the extent of the plaintiffs' reliance upon that permission, and the condition of the neighborhood. West Hartford v. Rechel, 190 Conn. 114,125 (1983). See Zoning Commission v. Lescynski, supra,188 Conn. 732.
Whether a party has met its substantial burden of proof in asserting the doctrine of municipal estoppel and establishing that a "substantial loss" would be sustained if the municipality were permitted to negate the acts of its agents, is a finding of CT Page 2916 fact to be determined by the trial court. Dornfried v. OctoberTwenty-Four, Inc., supra, 230 Conn. 636. "Substantial loss". in the context of municipal estoppel, has been likened to an "out of pocket investment, such as a capital investment in equipment, a building, or real property, that would be lost if the town zoning regulation were enforced." Id., 640. Such a "substantial loss" has been found, for example, where an owner made permanent improvements to and expended large sums of money in construction of real property "in good faith reliance on [issuance of a building] permit and apparent acquiescence by city officials." See River Forest State Bank v. Hillside, 6 Ill.2d 451, 454-55,129 N.E.2d 171 (1955), cited with approval in Dornfried v.October Twenty-Four, Inc., supra, 639-640.[26]
"Cases where the estoppel defense has succeeded are ones in which town officials acted to issue approvals when they were fully aware of the intended [use] to which a property or structure was to be put." Osterberg v. Seymour Zoning Board ofAppeals, supra, 1990 Ct. Sup. 3456. This equitable principle was applied where the plaintiffs' building plans had been submitted to and approved by the town building inspector, who had issued zoning and building permits after examining the site and proposals: the town and its zoning enforcement officer were estopped from taking action, one year after the completion of construction, to enforce applicable set-back regulations.Osterberg v. Seymour Zoning Board of Appeals, supra,1990 Ct. Sup. 3457. "In Buddenhagen v. Czapla, 13 Conn. L. Trib. 40, October 12, 1987, estoppel was found, sufficient to prevent a zoning enforcement action, where an architect presented building plans and the town's building officials approved them without examining them, and construction then occurred according to the plans. . . . Kilbourne v. City of New Britain, 109 Conn. 422, recognizes that there are vested rights to build under a building permit, where substantial construction takes place and where a building is completed in reliance upon permits issued by local zoning authorities." (Citations omitted.) Osterberg v. SeymourZoning Board of Appeals, supra, 1990 Ct. Sup. 3457.
The Connecticut Supreme Court thoroughly considered the tenets of municipal estoppel in Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 198. While that case specifically focused upon the validity of a variance, its lessons are pertinent to the present litigation. The dispositive issue in Bloom v. ZoningBoard of Appeals was "whether the principles of equitable estoppel entitled the owners of a legally nonconforming building CT Page 2917 to a variance on the ground of hardship when, in reliance on anerroneously issued permit, the owners have expanded and alteredthe building within the nonconforming areas." (Emphasis added.) Id., 199. The facts of Bloom v. Zoning Board of Appeals
established that in June of 1991, the Norwalk zoning enforcement officer had approved plans submitted by three restaurant owners for renovation of the building which housed their enterprise. After approval by the Norwalk zoning commission, the owners' application was approved and a building permit was issued in August 1992. Pursuant to these approvals, the owners began construction sometime in August or September 1992. In January 1993, as a result of the plaintiffs' complaint that the construction violated setback provisions of the zoning regulations, the zoning enforcement of officer issued a cease and desist order. In February 1993, the owners applied to the defendant Norwalk zoning board of appeals for a variance which would permit the construction. "After a duly noticed public hearing, the board granted the owners' application for the variance without making a specific finding regarding what hardship the owners would otherwise suffer. Id., 201.
The plaintiffs appealed the granting of the variance. The trial court "first concluded that the record failed to reflect any hardship that preexisted the construction that was commenced pursuant to the erroneously issued building permit." Bloom v.Zoning Board of Appeals, supra, 233 Conn. 201. The trial court further "noted that no case supports granting a variance because substantial construction had been undertaken based on the, issuance of a building permit." Id., 202. "Nevertheless, the trial court went on to conclude, in light of the principles of equitable estoppel, that the owners had demonstrated a hardship. On this basis, the [trial] court dismissed the plaintiffs' appeal. Id., 202.
In response to the plaintiffs' subsequent appeal of the trial court's action, the Supreme Court stated: "We agree with the trial court's conclusion that there was no hardship according to the traditional analysis as it applies to variances. We conclude, however, that the trial court incorrectly dismissed the plaintiffs' appeal on the ground that the variance was properly predicated on the principles of equitable estoppel." Id., 203. As noted above, the Supreme Court took the opportunity in Bloom v.Zoning Board of Appeals to generally affirm the principles of equitable estoppel as that concept applies to municipalities.Bloom v. Zoning Board of Appeals, supra, 233 Conn. 203, n. 6. The CT Page 2918 court, found, however, that those principles did not apply to the factual circumstances presented in Bloom v. Zoning Board ofAppeals, because the issue of municipal estoppel had been raised not by the parties, "but by the trial court itself." Id., 204. As the "trial court [had] incorrectly raised and decided the issue of whether the principles of equitable estoppel could support a hardship for the purposes of a variance" under the facts presented, the Supreme Court reversed the judgment of the trial court. Id., 205.
In overturning the trial court's decision, the Supreme Court noted significant factors which must be established before the trial court properly can consider the issue of municipal estoppel. In Bloom v. Zoning Board of Appeals, "[t]he theory of equitable estoppel had not been raised before the board. Furthermore, the owners had not raised it in the trial court, either in their own response to the plaintiffs' appeal, during the hearing in the trial court, or in their trial brief. . . The doctrine [of equitable estoppel] requires, however, more than a mere act in reliance on the conduct of the municipality; see, e.g., Kimberly-Clark Corp. v. Dubno, 204 Conn. 137, 149; and the factual issues that must be raised in order to support the equitable estoppel require an evidentiary hearing. Because the court held no evidentiary hearing on this subject, the plaintiffs in Bloom v. Zoning Board of Appeals never had an opportunity to present an argument on the legal applicability of the doctrine of equitable estoppel qua justification of a variance. A fundamental premise of due process is that a court cannot adjudicate any matter unless the, parties have been given a reasonable opportunity to be heard on the issues involved . . . and to present evidence and cross examine adverse witnesses. . . ." (Citations omitted.) Bloom v. Zoning Board of Appeals, supra,223 Conn. 204.
The facts of the present case differ somewhat from the facts at issue in Bloom Zoning Board of Appeals, and a distinct legal analysis is required. In this case, the record reflects that the issue of equitable estoppel was raised before the trial court through paragraph 4d of the plaintiffs' appeal dated June 4, 1991, restated through paragraph 4d of the plaintiffs' amended appeal dated August 22, 1991, and discussed in their brief submitted in support of their appeal. Cf. Bloom v. Zoning Boardof Appeals, supra, 233 Conn. 211.[27] The Minutes of May 20, 1991, however, fail to establish that the subject of estoppel was adequately raised during the course of the hearing before the CT Page 2919 board, and further fail to demonstrate that an opportunity was provided' through which the defendants to be heard on the issues involved. Id., 204. The minutes do reflect that some reference to the value of the plaintiffs' venture was made: when Janice Mercieri spoke in opposition to the Tabaccos' appeal, "[s]he stated that they had invested $375,000 on this property." Minutes of May 20, 1991, p. 2. The minutes fail to identify, however, what portion of that investment was related to the value of the lot at 59 Old Cider Mill Road, to the value of the structure as originally erected, to the construction work performed prior to the Tabaccos' appeal, or to the work done in the several days when the zoning permit at issue was effective, immediately prior to the Tabaccos' appeal. The minutes further reflect that the Tabaccos' attorney "referred to an economic hardship as being irrelevant." Minutes of May 20, 1991, p. 3. Notwithstanding this comment, however, the minutes do not provide a basis from which the court could conclude that the issue of "economic hardship" had been raised by the plaintiffs, nor that the issue was subjected to appropriate due process scrutiny at the hearing held on May 20, 1991.
In relation to this matter, the court has also reviewed the transcript which ostensibly represents a portion of the proceedings before the defendant board on that date.[28] The transcript relates a commentary by the Tabaccos' attorney at page eleven, which contains the following reference: "Secondly, as to the comment by Janice Mercieri: she has raised the issue of economic hardship, that is irrelevant to this issue, that has nothing to do (sic) with the action, there is certainly no sense of harassment here, these people live next door and have been, in our opinion, placed in jeopardy." Transcript, p. 12. This is the sole reference to the issue of municipal estoppel found in the transcript. The statement serves to place in context the comments made by the Tabaccos' attorney concerning "economic hardship", described above as occurring in the Minutes of May 20, 1991 at page two. However, absent a transcript which reflects Janice Mercieri's remarks in full, the court is deprived of an adequate basis from which it might conclude that the subjects of municipal estoppel and "substantial loss" within the meaning of Dornfriedv. October Twenty-Four, Inc., supra, 639-640; had been properly address at the hearing before the zoning board of appeals. Bloomv. Zoning Board of Appeals, supra, 223, Conn. 211.
Additionally, a thorough review of the remaining record in this case fails to provide, the plaintiffs with the succor they CT Page 2920 seek through application of the doctrines of equitable or municipal estoppel. Following the guidelines established byDornfried v. October Twenty-Four, Inc., supra, the court has reviewed the record and considered the arguments of counsel "with great caution." 230 Conn. 635. The record establishes that the plaintiffs have met their burden of proving only one prong of the test for municipal estoppel: the court finds that the plaintiffs were induced by agents of the city of Bristol, zoning' enforcement officer George Huston and building official Richard Pratt, to recommence construction of their addition upon the provision of zoning certificate No. 7026 and building permit No. 55843 on April 22, 1991. Dornfried v. October Twenty-Four, Inc.,
supra, 230 Conn. 635. There is no evidence present in the record, however, upon which the court can rely to find that the plaintiffs changed their position in reliance upon the actions of these agents, or that they incurred injury thereby. Id. Furthermore, there is no evidence in the record from which the court could find that the plaintiffs had sustained the "substantial loss" contemplated by Dornfried v. October Twenty-Four,Inc.; supra, 230 Conn. 639-640; during the time when the zoning certificate and building permit were operative, before the submission of the Tabaccos' appeal on April 24, 1991.
The facts of this case support the finding, instead, that the building permit and zoning certificate at issue were effective for only a brief period of time, and that the plaintiffs thereby could have sustained no "substantial loss" as the result of the issuance of these documents. Dornfried v. October Twenty-Four,Inc., supra, 230 Conn. 639-640. The record provides no basis from which the court could assess the nature, extent or dollar value of any construction work performed in reliance on the permit and certificate, nor does the record even permit the specific finding that any work on the addition was effected at all once the documents were issued. Compare Osterberg v. Seymour Zoning Boardof Appeals, supra, 1990 Ct. Sup. 3457.
As noted above, the plaintiffs bear the burden of showing that they had been unjustifiably induced to perform construction upon the addition, as well as proving that the board is estopped from utilizing its zoning procedures to inequitably force them to discontinue that construction. Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 206; Welch, v. Zoning Board of Appeals, supra,158 Conn. 216. In reaching its conclusion, the court has weighed the competing equitable principles presented through this segment of the appeal, including the defendant board's conduct in CT Page 2921 permitting initial construction of the plaintiffs addition, the lack of evidence to support the plaintiffs' claim that they suffered a substantial loss in reliance upon that permission, and the location of the plaintiffs' home in a neighborhood zoned R-25 pursuant to the Zoning Regulations for the city of Bristol. WestHartford v. Rechel, supra, 190 Conn. 125. The plaintiffs have here failed to meet their burden, and have failed to prove that it would be highly inequitable and oppressive under these circumstances to permit the defendant to revoke the zoning certificate issued on April 22, 1991. Because the court finds that the plaintiffs have failed to meet the test for municipal estoppel established through Bloom v. Zoning Board of Appeals;
supra, 233 Conn. 203 n. 6, 211; because they have failed to meet their burden of proof, they cannot prevail on this issue. WestHartford v. Rechel, supra, 190 Conn. 125.
 VI
The plaintiffs claim that by revoking the zoning certificate, the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion in that members of the defendant zoning, g board of appeals had participated in the hearing and decision to revoke the zoning certificate when they were directly and indirectly interested in the application in a personal or financial sense. The plaintiffs effectively alleged that the actions of the defendant board were tainted by bias or prejudice on the part of Commissioners Joseph Lanosa and Arthur Ward, each of whom had a "conflict of interest" with the proceedings concerning the Mercieri property. Brief of the Plaintiff (sic) Joseph C. Mercieri, Jr. and Janice H. Mercieri, March 9, 1992, p. 5. The plaintiffs here bear the burden of showing that the board acted illegally, arbitrarily and in abuse of its discretion by acting under the taint of such influence as is alleged. Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206;Welch v. Zoning Board of Appeals, supra, 158 Conn. 216. The court finds this issue in favor of the defendants.
 A
The court finds the following additional facts, which are necessary to resolve this claim.
On January 5, 1993, the plaintiffs submitted a Motion to Add Additional Evidence to the record in this case. The plaintiffs asserted therein, inter alia, that "[d]uring the Hearing before CT Page 2922 the Zoning Board of Appeals of the matter which is the subject of docket number CV 91-044620-S although the Chairman of the Bristol Zoning Board of Appeals, Joseph Lanosa was asked whether or not the had a personal interest in this matter and to disqualify himself from hearing that matter, he refused to do so and sat as Chairman during that hearing." Plaintiffs' Motion to Add Additional Evidence, dated January 5, 1993, p. 1. In that motion, the plaintiffs further averred a number of facts which they claimed occurred after the filing of the present appeal, but which would, if known, have established Joseph Lanosa's need to disqualify himself from participation in the hearing at issue, pursuant to General statutes Sec. 8-11.[29]
Over the defendants' objections, the court allowed testimony and evidence in support of the plaintiffs' motion, and permitted the plaintiffs to undertake discovery to further support their motion. This testimony and evidence was presented at hearings held on January 26, February 14, and June 16-17, 1994. On June 16, 1994, the parties stipulated that certain facts concerning the plaintiffs' claims of bias on the part of Joseph Lanosa, including their inquiries concerning his voluntary disqualification from the zoning board of appeals hearing, were not contained in the minutes recorded by the board's secretary, Linda Gouthro, on May 20, 1991.[30] They further stipulated, however, that these minutes contain an accurate summary of the plaintiffs' inquiries concerning the subject of recusal. Thereafter, on June 17, 1994, in compliance with General Statutes § 8-8(k), court ordered that the testimony and evidence presented at the prior hearings would be added to the record in this case.[31]
 B
General statutes § 8-8(k), in pertinent part, provides that "[t]he court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to thecontents of the record if (1) the record does not contain a complete transcript of the entire proceedings before the board, including all evidence presented to it, pursuant to section 8-7a, or (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court may take the evidence or May appoint a referee of committee to take such evidence as it directs . . ." Whether such additional evidence is necessary, and whether it should be admitted, is a matter within the sound discretion of the court. See Swensson v.CT Page 2923Planning Zoning Commission, 23 Conn. App. 75, 80 (1990).
The court had reviewed the record in its entirety, and found that no transcript of the board hearing had been submitted notwithstanding the provisions of General Statutes § 8-8(i) and § 8-7a. See part II. The defendant board had therefore failed to comply with the first requisite of § 8-8(k). Although the parties had stipulated that the Minutes of the May 20, 1991 meeting of the Bristol Zoning Board of Appeals contained a summary of the parties' presentations on the subject of disqualification, the court found the information to be incomplete, abbreviated, and insufficient for an equitable disposition of the appeal.[32] It was clear that the subjects of disqualification as to both Lanosa and Ward were raised before the board at the hearing on May 20, 1991, but that without additional evidence, the court would be deprived of access to facts necessary for resolution of the plaintiffs' claim of bias on the part of board members.[33] These additional facts were proffered to the court, and accepted for addition to the record pursuant to § 8-8(k).
 C
The record, as amended, accordingly reveals the following facts:
The minutes of May 20, 1991, contain the following pertinent information: "Attorney Timothy Furey . . . represented Janice and Joseph Mercieri. Attorney Furey questioned whether or not Chairman Lanosa should disqualify himself due to the fact that Chairman Lanosa and Mr. Tabacco were seen together on three separate occasions. Chairman Lanosa did not feel he should disqualify himself. His association with Mr. Tabacco had nothing to do with this matter, he said. Commissioner Ward said he sponsors a team in which Mr. Tabacco plays on. Commissioner Bouvier commented everybody knows everybody in town. When asked, Commissioner Ward said he would hear this application." Minutes of May 20, 1991, p. 2.
The amended record further reveals that the defendant, Robert Tabacco, was a student at Eastern High School in Bristol from 1969 to 1973. During this time, Lanosa served as a substitute teacher for Robert Tabacco. Lanosa and Robert Tabacco have never socialized, visited each other's homes, nor traveled together. May 20, 1991, Lanosa served as a member of, and chairman of, the CT Page 2924 Zoning Board of Appeals of the city of Bristol. Lanosa and Robert Tabacco had no professional or commercial dealings that pre-dated the hearing of May 20, 1991, either personally or through their family-owned corporations, Tabacco and Son Builders and Lanosa's Vetrano Development Corporation.
Following the date of the hearing of the Tabaccos' appeal, however, in May or June of 1991, Lanosa hired Robert Tabacco to perform "test hole" studies on a building lot that was for sale in Bristol. On that same occasion, Robert Tabacco showed Lanosa several lots that were for sale on Old Cider Mill Road in Bristol: these lots were located in the general vicinity of the Mercieris' home, approximately 300 yards from their lot. The test hole work was performed in June or July of 1991; Lanosa paid Robert Tabacco one hundred dollars in cash for his efforts. There was no evidence that this work was contemplated by, or was the subject of any discussion between Lanosa and Tabacco prior to May 20, 1991.
Subsequently, in November of 1991, Robert Tabacco commenced negotiations with Lanosa's daughter, Marybeth Lanosa Henry, concerning purchase of other lots in the general vicinity of the Mercieris' home. Robert Tabacco finalized transfer of lot 26, on Battle street in Bristol to Marybeth Lanosa Henry in March of 1992. This lot is located approximately 400 yards from the Mercieris' property. During February and March 1992, Robert Tabacco finalized his proposal for the construction of a home on lot 26, to be occupied by Marybeth Lanosa Henry. Construction of this home commenced in March of 1992 and concluded in June of 1992. Through Vetrano Development Corporation, Lanosa performed certain services in connection with construction of this home, including excavation, blasting, concrete work and sheet rocking. There was no evidence that this work was contemplated by, or was the subject of any discussion between Lanosa and Tabacco prior to May 20, 1991.
Thereafter, in May or June of 1992, Robert Tabacco began construction of another home in Bristol, to be occupied by another of Lanosa's daughters. This construction was completed in December of 1992 or January of 1993. Again, there was no evidence that this work was contemplated by, or was the subject of any discussion between Lanosa and Tabacco prior to May 20, 1991.
On at least one occasion, Robert Tabacco and Lanosa met in passing near a donut shop located at a busy intersection in CT Page 2925 Bristol. A meeting of this type, occurring on May 5, 1991, was brief and unplanned: at this time, no discussion was had concerning the Mercieri family, the construction of their addition, any pending zoning application or appeal therefrom. Robert Tabacco would, from time to time, use the parking lot at the building where Vetrano Development Corporation had its offices, and where Lanosa also parked.
The court received no significant evidence concerning any relationship that may have existed between Commissioner Ward and either Robert or Laurie Tabacco during the time period relevant to this matter, other than that which is described in the Minutes of May 20, 1991. The court received no significant evidence concerning any relationship that have existed between Laurie Tabacco and Lanosa during the time period relevant to this matter.
 C
The plaintiffs rely on General statutes § 8-11 for relief in this matter. As noted that statute expressly prohibits any member of any zoning board of appeals from participating in the hearing or decision of any matter in which the is directly or indirectly interested in a personal or financial sense.[34] As used within this statute, the concept of a "personal interest" has been "defined as an interest in either the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member. of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess. . . .'" Thorne v. ZoningCommission, 178 Conn. 198, 204-5 (1979), citing Anderson v.Zoning Commission, 157 Conn. 285, 290-91 (1968) (Other citations omitted.).
In reviewing the plaintiffs' claim that a member of a zoning board or board of appeals was subject to pecuniary or personal interest in this case, the court must remain aware that apprehension concerning partiality or favoritism on the part of zoning panel members will weaken the public's confidence in the integrity of that agency's actions. Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 554-54 (1989). The test observed by the court was not whether there was evidence of an CT Page 2926 actual and measurable conflict of interest presented, but whether the evidence supported the conclusion or inference that such interest reasonably might conflict with the zoning officer's responsibility to the community he serves. Thorne v. ZoningCommission, supra, 178 Conn. 205.
The determination whether a member has a particular interest is a factual one and depends upon the facts and circumstances of the particular case. See Cioffoletti v. Planning ZoningCommission, supra, 209 Conn. 554-55; Holt-Lock, Inc. v. Zoning Planning Commission of the Town of Granby, 161 Conn. 182, 189
(1971); Thorne v. Zoning Commission, supra, 178 Conn. 205;Anderson v. Zoning Commission, supra, 157 Conn. 291. In subjecting the facts and circumstances of this case to the requisite careful scrutiny, the court heeded the edict that it "must exercise a great degree of caution." (Citation omitted.)Petrowski v. Norwich Free Academy, 199 Conn. 231, 242 (1986). The plaintiffs, who here claim a disqualifying interest, have the burden of proving the commissioners' partiality and prejudgment.O G Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419,429 (1995), Furtney v. Zoning Commission, 159 Conn. 585,594-95 (1970); Woodburn v. Conservation Commission, 37 Conn. App. 166,175 (1995).
As noted, in the present case, at the request of the plaintiffs, the record of the May 10, 1991 board hearing was reconstructed and completed through the admission of evidence admitted and accepted pursuant to General statutes § 8-8. SeeLathrop v. Planning Zoning Commission, 164 Conn. 215, 220
(1973). In reviewing such evidence as has been added to the record, the court determined "what evidence the [zoning authority] could have believed and what inferences it could have drawn therefrom without acting illegally or so arbitrarily or unreasonably as to invalidate its action." See Morama Corp. v.Town Council, 146 Conn. 588, 593-94 (1959).
In this case, other than on the one noted occasion when Robert Tabacco and Lanosa met briefly near a local donut shop, without conversation, the court found no credible evidence that could establish any specific relationship or mutual interests between Lanosa and Robert Tabacco that existed prior to the May 20, 1991 meeting of the Zoning Board of Appeals of the city of Bristol. The court received no credible testimony that could establish that Robert Tabacco ever participated in a conversation with Lanosa, or with any member of the defendant board, CT Page 2927 concerning the Mercieris' zoning matters, their past, present, or planned construction, prior to the hearing in question. Despite the plaintiffs' claims, the court received no credible evidence that could establish that any of the dealings between Douglas Reif, an adjacent landowner, and Marybeth Lanosa Henry had in any way influenced Lanosa in his dealings with the board. The court received no credible evidence that could establish that Robert Tabacco showed Lanosa, or his daughters, any privileged treatment in business dealings conducted after the hearing before the defendant board on May 20, 1991. Accordingly, the court was presented with no evidence that could establish that either Lanosa or Ward was biased in favor of the Tabaccos' and against the Mercieri's, in connection with the present zoning matters.
The record, as amended, provides no evidence that either Lanosa or Ward had any financial interest in the outcome of the application. Similarly, no evidence is shown of any disqualifying relationship, personal interest, favoritism, hostility, bias or prejudice with or toward any opponent of the Mercieris' appeal or any proponent of the Tabaccos' application. See Thorne v. ZoningCommission, supra, 178 Conn. 204-5. The plaintiffs have attempted, but failed, to show that either Lanosa or Ward had made a decision prior to the hearing which prevented their fair consideration of the evidence presented to the commission. The plaintiffs have failed, as well, to demonstrate that any relationship between Tabacco and Douglas Reif, or between Lanosa and Douglas Reif, in any way affected, or had the propensity to affect, Lanosa's decisions concerning the Mercieris' zoning matters. Furthermore, the court has found no evidence of any interest between these individuals that reasonably might conflict with Lanosa's or Ward's responsibilities to the community and the citizens of the city of Bristol. See Thorne v. Zoning Commission,
supra, 178 Conn. 205. The plaintiffs have therefore failed to meet the legal standards reviewed above for purposes of establishing their access to relief pursuant to § 8-11, and accordingly, they cannot prevail on this issue.
 VII
The plaintiffs further claim that by revoking their zoning certificate, the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion, as the result of this action was to take property from the plaintiffs without compensation in violation of General statutes §22a-43a(a),[35] and in violation of the fifth and fourteenth CT Page 2928 amendments to the United states constitution and the constitution of Connecticut, article first, § 11.[36] The plaintiffs urge the court to conclude that the actions of the defendant board of appeals have effectively deprived them of "any use" of the addition to their proper, "resulting in a practical confiscation and an unconstitutional taking of their property rights." Brief of the Plaintiff (sic) Joseph C. Mercieri, Jr. and Janice H. Mercieri, March 9, 1992, p. 19, 20. The court finds this issue in favor of the defendants.
Generally, a taking or "confiscatory effect results when a zoning regulation practically destroys or greatly decreases the value of a specific piece of property.'" (citations omitted.)Stankiewicz v. Zoning Board of Appeals, supra, 15 Conn. App. 733-34. It has been said more simply that "confiscation only occurs in those rare instances when the municipality's regulation prevents the owner from making any beneficial use of the land." (Emphasis added.) T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992), p. 17. A landowner has the burden of establishing that a land use regulation, or the effect of a land use agency's action, amounts to a taking of his property. Smith v. ZoningBoard of Appeals, 227 Conn. 71, 99 (1993); Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 415 (1991); Bombero v.Planning Zoning Commission, 218 Conn. 737, 746 (1991).
The test for determining whether a decision, by a local zoning authority effectively confiscates a landowners lawful property rights has been enunciated as follows: "`[T]he determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternative available to the landowner.' . . . `The financial effect on a particular owner must be balanced against the health, safety and welfare of the community.'" (Citations omitted.)Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146, 151
(1976). Also, Bauer v. Waste Management of Connecticut, Inc.,234 Conn. 221, 256-57 (1995). While the court may be mindful of a hardship imposed upon a landowner who is subject to unfavorable zoning regulation, a taking can be found only where the actions of the land use agency has resulted in a fixed, final preclusion of reasonable potential uses of the property in question.Brecciaroli v. Commissioner of Environmental Protection,168 Conn. 349, 357-58 (1975). CT Page 2929
The facts of this case reveal that prior to the construction of any addition, the plaintiffs and their immediate family resided in the single family dwelling located at 59 Old Cider Mill Road. There has been no evidence presented from which the court reasonably could conclude that residence at the dwelling would be dangerous or even detrimental to the Mercieris' health, absent the new rooms and facilities to be provided through construction of the addition according to the amended plans which were the subject of the zoning certificate at issue. Rather, the logical inference is that with or without the construction of the addition, the property at 59 Old Cider Mill Road maintains a valid and beneficial use as residential real estate. Despite the plaintiffs' insistence to the contrary, the court finds that there is indeed economically viable use for the lot and its homestead even if construction pursuant to the April 22, 1991 building documents is prohibited. The court therefore finds that no unconstitutional confiscation or taking of the Mercieris' property has occurred under the facts and circumstances of this case. Smith v. Zoning Board of Appeals, supra, 227 Conn. 100; Gilv. Inland Wetlands Watercourses Agency, supra, 219 Conn. 416;Dooley v. Town Plan Zoning Commission, 151 Conn. 304, 311
(1964).
 VIII
The court has found that the plaintiffs have met their legal burden of proving that the defendant board acted illegally, arbitrarily and in abuse of its discretion by failing to state the reasons for its decision upon the record, in violation of General statutes § 8-7; because the board's action cannot be found to be in accord with the zoning regulations of the city of Bristol; and because the board's action cannot be, found to be reasonably based upon evidence presented at the hearing on May 20, 1991. The court therefore grants the plaintiffs' appeal from the decision of the defendant Zoning Board of Appeals for the city of Bristol, reverses the decision of that board pursuant to General statutes § 8-8(l), and remands the matter to that board for further action consistent with this opinion.
BY THE COURT,
N. Rubinow, J.